IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


DENNIS EARL LAMAR, AIS 242959,   :

      Petitioner,            :

vs.                        :      CA 13-0422-WS-C

GARY HETZEL,            :

      Respondent.


## REPORT AND RECOMMENDATION

Dennis Earl Lamar, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his May 20, 2005 capital murder and attempted-murder convictions in the Circuit Court of Mobile County, Alabama; he was sentenced to three concurrent terms life imprisonment without the possibility of parole with respect to his capital murder convictions and life terms with respect to the attempted-murder convictions to run consecutive to each other and to each of his capital murder sentences. The Alabama Court of Criminal Appeals affirmed Lamar's convictions and sentences by unpublished memorandum opinion issued on May 23, 2008. *See Lamar v. State,* 26 So.3d 505 (Ala.Crim.App. 2008) (table). Petitioner's application for rehearing was denied, *see id.,* and his petition for writ of certiorari was denied by the Alabama Supreme Court on September 12, 2008, *see Ex parte Lamar,* 34 So.3d 740 (Ala. 2008) (table). A certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on September 12, 2008. (*See* Doc. 12, Exhibit K.) Lamar filed a Rule 32

petition in the Circuit Court of Mobile County, Alabama collaterally attacking his convictions and sentences on September 1, 2009. (Doc. 13, Exhibit L, PETITION FOR RELIEF FROM CONVICTION OR SENTENCE, at 1.) The trial court summarily dismissed Lamar's collateral petition, as amended on four different occasions, without conducting a hearing, by 16-page written decision dated November 7, 2012. (Doc. 13, Exhibit L, November 12, 2007 ORDER.) The Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished memorandum decision issued on May 24, 2013. (Doc. 13, Exhibit P.) Petitioner's application for rehearing was overruled on June 21, 2013 (Doc. 13, Exhibit R), and the certificate of final judgment of affirmance was entered on July 10, 2013 (Doc. 13, Exhibit S).

In his petition before this Court, filed August 13, 2013 (Doc. 1, at 13), Lamar raises the following issues which he claims entitle him to federal habeas corpus relief: (1) his convictions and sentences for three counts of capital murder for the murder of two victims violates the principles of double jeopardy; (2) he was denied the opportunity to give testimony on his own behalf in violation of the Due Process Clause; (3) the conduct of the prosecutor in crying during his cross-examination rendered his trial fundamentally unfair; (4) the State's refusal to retroactively apply the 2006 amendment to Alabama's self-defense statute, Ala.Code § 13A-3-23, to his case violates due process; (5) his trial counsel provided ineffective assistance on twelve (12) different occasions; (6) his appellate attorney erred in failing to raise seven different issues on appeal; and (7) the trial court was without jurisdiction to render judgment or impose sentence because Alabama's Capital Murder Statute, Ala.Code § 13A-5-40, is unconstitutional. Respondent contends that the first four grounds set out in Lamar's habeas corpus petition have no

merit (*see* Doc. 10, at 5 & 6-12) and that this Court is procedurally barred from reaching the merits of his remaining claims (*id*. at 5-6 & 13-14).

This cause is before the Court on the petition (Doc. 1), respondent's answer with attachments (*see* Docs. 10-13), and petitioner's response (Doc. 19) to the answer and the undersigned's December 9, 2013 show cause order (Doc. 14). A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *Compare Means v. Secretary, Department of Corrections*, 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied*, ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) *with Allen v. Secretary, Florida Dep't of Corrections*, 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied*, ___ U.S. ___, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011).

## FACTUAL BACKGROUND

The opinion of the Alabama Court of Criminal Appeals on direct appeal sufficiently sets forth the circumstances giving rise to the charges leveled against Lamar, as follows:

> On the morning of July 29, 2003, Lamar's cousin, Jeffrey Mose, telephoned Lamar and asked that he come to Antone Square Apartments because Mose and Lakia Jackson, the mother of Mose's child, were concerned about a potential altercation with Bryan Edwards, Jackson's boyfriend, with

whom she had broken off a relationship earlier that morning. Mose had spoken with Edwards on the telephone and, according to Mose, Edwards stated that he would "be there in 15 minutes and when he got there, he got something for me and her . . . ." (R. 396.) Edwards denied making any express or implied threats to Mose or Jackson, but testified that he returned to Jackson's apartment only to pick up his belongings. In response to the call from his cousin, Lamar [went] to Jackson's apartment armed with a pistol.

Edwards arrived at the apartments a short time later in a red van driven by Allison and also occupied by Allison's two cousins, Samson and [Eddie] Moore. When Edwards got out of the van, he saw Mose sitting in a gray Cadillac []. Edwards and Mose walked together through a breezeway to the door of Jackson's apartment and Mose opened the door and told Jackson that Edwards was with him. When Mose opened the apartment door, Edwards saw what he believed were the legs of another person in the apartment and he got scared and began to back away from the apartment through the breezeway; Lamar followed him. As he backed away, Edwards reached to pull up his pants, which were too big and falling down, and then he turned and ran toward the van. Lamar followed Edwards to the van, pointed his gun at the driver, Allison, and said "Don't move the car, bitches." (R. 515.) Allison put the van in reverse and attempted to flee, at which point Lamar shot him. Lamar then shot [Eddie] Moore, who was in the front passenger seat. Edwards and Sampson [Moore] got out of the van and attempted to run away. However, Lamar shot both as they ran. Allison and [Eddie] Moore died from multiple gunshot wounds; Edwards and Sampson [Moore] were injured from multiple gunshot wounds. After the shooting, Lamar, Mose, and Jackson fled the scene. Lamar later surrendered to authorities.

Lamar testified in his own defense, claiming that the shooting was in self-defense. Lamar said that when Edwards was backing through the breezeway away from the apartment, it appeared to him that Edwards reached for a gun in his pants. According to Lamar, he followed Edwards to the van to tell Edwards and his friends not to start any trouble, but that when he walked up to the van, the driver, Allison, looked at him and then leaned over the console. Lamar said that he thought Allison was reaching for a gun, so he fired his pistol. However, testimony indicated that no guns were found in the van or anywhere else at the scene. In addition, none of the witnesses to the crime saw any of the four victims with a weapon.

(Doc. 12, Exhibit F, at 2-3 (internal footnote omitted).)

On May 20, 2005, the jury returned verdicts finding Lamar guilty of three counts

4

of capital murder in connection with the murders of Michael Allison and Eddie Moore (*see* Doc. 11, Exhibit A, at T.T. 1106) and guilty of the attempted murder of Bryan Edwards and the attempted murder of Sampson Moore (*id.* at 1107). As noted by the Alabama Court of Criminal Appeals, the murders of Allison and Eddie Moore "were made capital (1) because Moore was in a vehicle at the time of his death, [] § 13A-5-40(a)(17), Ala. Code 1975; (2) because Allison was in a vehicle at the time of his death, [] § 13A-5-40(a)(17), Ala. Code 1975; and (3) because Moore and Allison were killed by one act or pursuant to one scheme or course of conduct, [] § 13A-5-40(a)(10), Ala. Code 1975." (Doc. 12, Exhibit F, at 1.) At the initial sentencing hearing on July 29, 2005, the trial court mistakenly noted that Lamar had been convicted of one count of capital murder and two counts of attempted murder and sentenced him to life without parole on the capital murder charge and life sentences on the attempted murder convictions, with all sentences to run consecutive to each other (Doc. 11, Exhibit A, July 29, 2005 Sentencing Hearing Tr. at 8-9);[1] on August 25, 2005, the sentencing hearing was reconvened because the trial court realized its mistake in only imposing sentence as to the first count of capital murder, as opposed to all three counts (*see* Doc. 11, Exhibit A, August 25, 2005 Sentencing Hearing Tr. at 3 & 3-4). "As to Count Two and Count Three, the Court sentences him to a term of life without the possibility of parole." (*Id.* at 4; *see also id.* at 5

---

[1]     During this initial hearing on July 29, 2005, Lamar was given the opportunity to allocute but declined to make any comments. (*See id.* at 8 ("THE COURT: Mr. Lamar, . . . [a]nything you wish to say before sentence is imposed? THE DEFENDANT: No, sir.").)

(those sentences were ordered to run concurrently).)[2]

The Alabama Court of Criminal Appeals affirmed Lamar's convictions and sentences by unpublished memorandum opinion, *see Lamar v. State,* 26 So.3d 505 (Ala. Crim. App. May 23, 2008) (table), following remand to the Mobile County Circuit Court so that the trial court could correct its case-action summary sheets (*see* Doc. 12, Exhibit F, at 2 n.1 ("The transcript of the sentencing hearing reflects that Lamar was sentenced to life imprisonment for each of the attempted-murder convictions. However, the case-action summaries contained in the record indicated that Lamar was sentenced to life imprisonment without the possibility of parole for each of his attempted-murder convictions. By order dated September 27, 2006, we remanded this case for the circuit court to correct the case-action summaries to reflect that Lamar was sentenced to life imprisonment, not life imprisonment without the possibility of parole. On October 5, 2006, the trial court submitted corrected case-action summaries indicating that Lamar was sentenced to life imprisonment for each of the attempted-murder convictions.").

## I.

Lamar first contends that his convictions and sentences for three counts of capital murder for the murder of two victims violates the principles of double jeopardy. This argument is meritless.

In Ex parte Peraita, 897 So.2d 1227 (Ala. 2004), the Alabama Supreme Court stated:

Each count of capital murder is a separate offense, as shown by the beginning of the statute defining capital offenses, which provides, The following capital offenses. Ala. Code

---

[2]     Trial counsel objected to the defendant being sentenced as to Counts Two and Three on the basis that "it would be double jeopardy." (*Id.* at 4.)

1975, § 13A-5-40(a). So long as each count of the crime concerns a separate offense, as opposed to a separate method of proving that offense, the double-jeopardy provision of the United States Constitution is not implicated.

In addition, in Ex parte Dawson, 675 So.2d 905 (Ala. 1996), the Alabama Supreme Court explained:

In 1932, the United States Supreme Court held that multiple punishments for multiple statutory offenses do not violate the prohibition against double jeopardy where each statutory offense requires proof of an additional fact that the other statutory offenses do not require. In other words, as long as each statutory offense requires proof of additional facts, the double jeopardy prohibition is not implicated.

Lamar was convicted of two counts of murder made capital because the victim was in a vehicle; however, each count involved a different victim and, thus, each required an element that the other did not. Lamar was also convicted of one count of murder made capital because two persons were murdered by one act or pursuant to one scheme or course of conduct. Although this count involved the same two victims as the other two counts, it clearly required an element that the other counts did not. Thus, because each of the three counts of capital murder required an element that the others did not, Lamar's convictions and sentences for three counts of capital murder for the murders of two victims did not violate double-jeopardy principles.

II.

Lamar contends that the trial court erred in not allowing him to explain, on redirect examination, comments he had made during telephone conversations made from the jail after his arrest. He maintains that he should have been allowed to explain his comments in order to rebut the inferences raised by the State during cross-examination.

During its case-in-chief, the State introduced into evidence several tape recordings of telephone calls Lamar had made while in jail awaiting trial. During cross-examination, the prosecutor questioned Lamar extensively about these calls, including several arguably inculpatory comments made by Lamar during these calls. Initially, the prosecutor questioned Lamar about a conversation he had with Mose, in which he repeatedly questioned Mose about what Mose had told the police about the shooting, and in which he made comments that the prosecutor suggested showed a cover up between Lamar, Mose, and Jackson. During

this questioning, Lamar repeatedly denied that he had been involved in any cover up, and was allowed to explain several of the comments he made during the conversation. The prosecutor then questioned Lamar about a conversation he had had with his girlfriend, during which Lamar stated: "Hey tell my brother to murder [Mose]. Fuck that shit, Kia[] too." (C. 1425.) Lamar denied that this statement was an order to have witnesses murdered, but explained that he was merely trying to get these witnesses to talk to his lawyers so that they could testify on his behalf since they were present during the shooting. The prosecutor also questioned Lamar about a conversation he had had with his girlfriend during which they discussed attempted-murder charges against him.[3] During this conversation, Lamar complained that he could not be charged with attempted murder because "the bitches didn't get hit" (C. 1437), and that he "could have popped [the janitor's] ass, too." (C. 1438.)

On redirect examination, the following then occurred:

[Lamar's counsel]: Okay. All right. In the tape, where [the prosecutor] was referring to, you said about you were asking [Mose] some questions –

[Lamar]: Um-huh.

[Lamar's counsel]: -- isn't that right?

[Lamar]: Yes, sir.

[Lamar's counsel]: What were you asking him about?

[Prosecutor]: Objection, it[']s cumulative.

THE COURT: The tapes speak for themselves, let's move on, please.

[Lamar's counsel]: Well, I'm going on what his –

THE COURT: Let's move on, please.

[Lamar's counsel]: You're not going to allow me to go

---

[3]    "The attempted-murder charges referred to during the conversation were not the attempted-murder charges Lamar was ultimately convicted of, but appear to be other charges that may have been filed in relation to the shooting." (Doc. 12, Exhibit F, at 5 n.3.)

over what his mental operation was, to explain?

THE COURT: If you want to ask him a question, the tapes speak for themselves.

[Lamar's counsel]: That's what I am, I'm asking him what he was – what he's referring to, that's what I'm asking him.

THE COURT: The tapes speak for themselves, [defense counsel], let's move on. If you have a specific question, I will allow it.

[Lamar's counsel]: Okay. Thank you, I understand, Judge.

[Lamar's counsel]: Okay. Let me ask you – let me ask you to do it this way then, I'm talking about this page, not the August 9th tape. Let me show you this, Dennis, you were asked – you were saying in your reference to Jeffrey talking to you, You can laugh all the fuck you want, nigger, I'm stuck up in here getting this motherfucker chair, nigger, you better start talking to me, Dog, so I can know what I need to be doing. What did you mean when you were saying that?

[Prosecutor]: Objection, judge.

THE COURT: Sustained. Let's move on. Let's move on, [defense counsel].

[Lamar's counsel]: I'm sorry?

THE COURT: I sustain the objection.

[Lamar's counsel]: All right. When you said, I'm talking about you ain't told me nothing yet what you said, what were you referring to?

[Prosecutor]: Objection, Judge.

THE COURT: Sustained, let's move on, [defense counsel].

[Lamar's counsel]: You're not going to let me ask him

what he –

THE COURT: No, sir, I've made my ruling. I'll allow you to make a proffer at the appropriate time.

[Lamar's counsel]: Okay. Thank you, Judge. All right. So if I understand you, Judge, you don't want me to ask him any questions about what he meant?

THE COURT: Sir, I will be more than –

[Lamar's counsel]: I just want to make sure I understand your ruling.

THE COURT: Next question. Let's move on.

[Lamar's counsel]: Because I'm going to do the same thing with some other tapes and if that's your ruling, I won't do that.

THE COURT: That is my ruling, [defense counsel].

[Lamar's counsel]: Okay.

[Lamar's counsel]: The prosecutor asked you if you were ordering the murder of the witnesses, remember she asked you that?

[Lamar]: Yes, sir.

[Lamar's counsel]: Now, did you have any way to order anybody to get killed?

[Prosecutor]: Objection, Judge.

[Lamar]: No, sir.

THE COURT: Overruled. Asked and answered, let's move on.

[Lamar's counsel]: What did you mean when you were saying that to [your girlfriend]?

[Lamar]: I was mad. I was probably mad and said it out of my brain. I didn't –

[Lamar's counsel]:  What did you mean when you told [Mose], Tell the motherfucking lawyers what time it is?

[Lamar]:  Just to talk to my lawyer.

[Lamar's counsel]:  You wanted him to do what?

[Lamar]: Talk to my lawyer, tell him what happened.

[Lamar's counsel]:  Thank you. That's all.

(R. 965-68.)  At the conclusion of Lamar's testimony, the following occurred:

[Lamar's counsel]:  Judge, this is the proffer we'll make where I disagree with the Court's ruling, respectfully, that the prosecutor, on cross, had gone through the various tapes that had been made of Mr. Lamar's conversation[s] with his girlfriend from the jail and by cross or leading questions, was able to imply, even state on numerous occasions that you said this and weren't you doing that. The only way for the defense to be able to counter that is to be able to explain, when I said that statement, this is what I was referring to. Of course it would be his mental operation, but I think that he's the only one that can explain what his statement was and what he was referring to. The Court sustained the State's objection several times for me asking though and, in fact, ordered me to move on and I think it denied the defendant the opportunity to explain what he meant when he was making certain statements.

THE COURT:  Your objection is so noted and your proffer is made for the record.

[Lamar's counsel]:  Thank you. I think it's prejudicial enough, Judge. It will substantially affect his defense and deny him an effective assistance of counsel for us not being able to do that.

(R. 968-69.)

It is a general principle that, where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment. A

party has a right to clarify or rebut a false impression on cross-examination. However, whether or not to allow questions on redirect examination is within the discretion of the trial court. Rule 611(a), Ala.R.Evid., provides that "[t]he trial court shall exercise reasonable control over the mode and order of interrogating witnesses." Although a trial court's discretion as to the examination of witnesses does not go to the extent of authorizing a denial to a party the right to explain or qualify discrediting facts brought out by the opposite side, it does permit a trial court to limit questioning as to matters that are cumulative and repetitious. It is within the trial judge's discretion to exclude cumulative evidence, and to refuse questions which call for a mere repetition of witness testimony already in the possession of the jury.

Here, all of the State's objections were lodged when counsel attempted to question Lamar about the conversation he had with Mose wherein Lamar repeatedly asked Mose to tell him what Mose had told the police regarding the shooting, the conversation that the prosecutor used to raise the inference of a cover-up. That particular conversation, however, had been thoroughly covered during the prosecutor's cross-examination of Lamar and Lamar had been allowed to explain the comments he had made during that conversation, and had repeatedly denied the existence of, or any involvement in, any type of cover-up. The trial court did not err in refusing to permit repetitious testimony on this subject.

Moreover, when the trial court ruled on the State's initial objection, the court indicated that it would allow specific questions regarding Lamar's mental operation with respect to certain comments, and counsel questioned Lamar, without objection, about what he meant when he commented on murdering Mose and Jackson and about what he meant when he made comments about his lawyer. Furthermore, during cross-examination, Lamar had the opportunity to explain the several arguably inculpatory comments that he had made during the telephone calls, and he offered various explanations regarding the meaning of those comments. When Lamar made his proffer to the trial court, he did not allege what additional comments he made during the telephone calls that he wanted to explain or what his explanation of those comments would have been; he merely made a general assertion that he was denied the opportunity to explain his comments. Likewise, Lamar does not allege in his brief on appeal what other comments he made during the telephone calls that he wanted to explain or what his explanation would have been.

We have thoroughly reviewed the record and we find no error on the part of the trial court in sustaining the objections lodged by the State nor do we find that Lamar was denied an opportunity to explain his comments. Therefore, Lamar is not entitled to relief on this claim.

III.

Lamar also contends that the trial court erred in denying his motion for a mistrial, made on the ground that the prosecutor improperly displayed emotion, specifically crying, during her cross-examination of him. He maintains that the prosecutor's crying prejudiced his defense.

The record reflects that during cross-examination of Lamar, the prosecutor questioned Lamar about the shooting and the wounds to the victims. During this line of questioning the following occurred:

> [Prosecutor]: Did you see the CatScan of Sampson's brain?
>
> [Lamar]: No, ma'am.
>
> [Prosecutor]: Were you in court when the doctor showed it?
>
> [Lamar]: Yes, ma'am.
>
> [Prosecutor]: Did you see how the brain shifted?
>
> [Lamar]: No, ma'am, I wasn't looking at that.
>
> [Prosecutor]: Excuse me, Judge.
>
> [Lamar's Counsel]: Judge, can we approach?
>
> THE COURT: No, we are going to finish this examination and we're fixin' to move on.

(R. 953.) At the conclusion of Lamar's testimony, Lamar moved for a mistrial as follows:

> [Lamar's counsel]: -- during the State's cross examination of the defendant, [the prosecutor] became visibly upset to the point that she was crying. At that point, I was going to approach the bench and ask for a mistrial, the Court told me, no, that we – I couldn't come up there and we finished the cross examination. At this time, we would ask the Court to grant a mistrial in that the prosecutor's crying prejudices our client and would be an inflammatory sort of action on the State's part. I'm not saying she intended it or

13

not, but whatever, she was visibly upset and crying during part of the cross examination. She had to take a moment. I believe she said, Let me have a moment or I'm sorry or whatever it was, but in any event, we would ask the Court for a mistrial.

THE COURT: [Second prosecutor].

[Second prosecutor]: Judge, you can't factor her emotion out completely. During [defense counsel's] examination of [Williams], I believe it was, he became visibly angry and just the same thing, I mean, I saw nothing that occurred during the examination that would warrant a mistrial in any way, from any of the jury, no reactions from anybody in the courtroom. What emotion, if any, [the prosecutor] exhibited, certainly, there's been no showing that it prejudiced him in any way, that it's outside the bounds of what trial lawyers do.

THE COURT: Anything further from either side on that issue?

[Lamar's counsel]: Judge, I'm gonna – I'm sorry, on that issue?

THE COURT: On that issue?

[Lamar's counsel]: No. No. No.

THE COURT: Okay. Motion for a mistrial is denied.

(R. 969-71.)

Initially, we question whether this issue was properly preserved. Although counsel asked to approach the bench during the prosecutor's cross-examination of Lamar, he did not object to the prosecutor's alleged crying nor move for a mistrial at that time. To be timely, a motion for a mistrial must be made immediately after the grounds for the motion become apparent. However, when counsel did move for a mistrial at the conclusion of Lamar's testimony, counsel stated that he had intended to move for a mistrial at the bench during cross-examination of Lamar, but that because the trial court would not allow him to approach the bench, he was unable to do so. Therefore, out of an abundance of caution, we address this claim.

Alabama courts have repeatedly held that a mistrial is a drastic remedy, to be used sparingly and only to prevent manifest injustice. The decision whether to grant a mistrial rests within the sound discretion of the trial court and the court's ruling on a motion for mistrial will not be overturned absent a manifest abuse of that discretion.

This court has stated that in reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract.

Although no Alabama court has ever specifically addressed the issue relating to a prosecutor crying during a trial, this Court has addressed issues relating to emotional outbursts by victims and spectators. Generally, an emotional outburst by a spectator or family member during a criminal trial, even where the outburst may influence or disturb the jury, does not require reversal unless it appears that the rights of the accused were prejudiced thereby, and, generally in the absence of [a] showing to the contrary, it will be assumed that the jury was not prejudiced. In addition, other jurisdictions have addressed the issue of a prosecutor crying during trial. In Major v. Commonwealth, 177 S.W.3d 700 (Ky. 2005), the Kentucky Supreme Court found no prejudicial error in the prosecutor crying in front of the jury; the Court explained:

Trials are conducted by humans, who often show indignation, anger or sadness. This does not mean that real emotion is misconduct. The criteria by which to judge statements and actions during closing argument is whether or not the act is inflammatory, substantially prejudiced the defense, or violated the Appellant's constitutional rights. We do not find that it did. Moreover, such conduct does not qualify as palpable error.

177 S.W.3d at 711.

We have reviewed the record and we conclude that the prosecutor's crying, when viewed in the context of the entire trial, was not so prejudicial as to warrant a mistrial.[4] . . . The prosecutor's crying

_____

[4] "We note that Lamar did not request that a curative instruction be given to the jury; therefore, we do not consider whether such an instruction should have been given had a request in that regard been made." (Doc. 12, Exhibit F, at 15 n.5.)

occurred during an intense cross-examination of Lamar regarding where each of the victims were located when they were shot. It is unreasonable to expect that criminal trials will be conducted without some show of feeling. Moreover, there is no indication that the jury was disturbed or distracted by the prosecutor's crying and, other than a bare allegation by Lamar, there is no indication that Lamar was prejudiced. Therefore, we find no error on the part of the trial court in denying Lamar's motion for a mistrial on this ground.

IV.

In his supplemental brief, Lamar also contends that he is entitled to a new trial so that he may receive the benefit of the recent amendment to the self-defense statute, § 13A-3-23, Ala. Code 1975, which, he argues, applies retroactively. However, in <u>White v. State</u>, . . ., this Court held that "the amendment to § 13A-3-23 applies only to those crimes that occurred after June 1, 2006, its effective date." The crimes in this case occurred on July 29, 2003. Therefore, the amendment to § 13A-3-23 does not apply to Lamar's case and Lamar is not entitled to a new trial on this ground.

Based on the foregoing, the judgment of the trial court is affirmed.

(Doc. 12, Exhibit F, at 3-16 (some footnotes omitted; most internal quotations marks and citations omitted; brackets omitted and added; emphasis in original).)  Lamar's application for rehearing was denied, *Lamar, supra,* 26 So.3d 505, and his petition for writ of certiorari was denied by the Alabama Supreme Court on September 12, 2008, *see Ex parte Lamar,* 34 So.3d 740 (Ala. 2008) (table). The certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on September 12, 2008. (*See* Doc. 12, Exhibit K.)

Lamar filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama collaterally attacking his convictions and sentences on September 1, 2009 (Doc. 13, Exhibit L, PETITION FOR RELIEF FROM CONVICTION OR SENTENCE, at 1) and was later granted leave to amend his collateral petition on four different occasions (*see* Doc. 13, Exhibit P, at 2 n.1 ("Lamar filed motions to amend his petition on November 4, 2010,

January 17, 2012, March 29, 2012, April 9, 2012, and June 18, 2012. The circuit court granted all but the last motion to amend.")). In his Rule 32 petition, as amended, Lamar raised twelve claims of alleged ineffective assistance of trial counsel,[5] six claims of alleged ineffective assistance of appellate counsel,[6] and also claimed, for the first time, that the trial court was without jurisdiction to render judgment or impose sentence because Alabama's Capital Murder Statute is unconstitutional and void. (*See* Doc. 13, Exhibit L.)

The trial court summarily dismissed Lamar's collateral petition, without conducting a hearing, by 16-page written decision dated November 7, 2012. (Doc. 12, Exhibit L, ORDER.)

The Court compiled the following grounds from Lamar's various Rule 32 filings:

Ineffective Assistance of Trial Counsel

    a) Failure to move to dismiss improper indictments.

    b) Failure to move to dismiss arbitrary and unconstitutional capital charges and for selective prosecution.

    c) Failure to move to quash non-representative jury venire;

    d) Poor strategy during juror selection process.

---

[5]    These are the same twelve instances of alleged ineffective assistance of trial counsel raised in the instant federal habeas corpus petition. (*Compare* Doc. 13, Exhibit L *with* Doc. 1, at 16-25.)

[6]    In his Rule 32 petition, as amended, Lamar did raise one claim of ineffective assistance of appellate counsel claim he raises in his § 2254 petition, namely, that his appellate counsel erred in not challenging trial counsel's failure to challenge the sufficiency of the evidence by motion for judgment of acquittal. (*Compare* Doc. 13, Exhibit L *with* Doc. 1, at 30-31.)

e) Failure to object to trial court allegedly failing to administer jurors' oath prior to voir dire.

f) Failure to object to trial court (rather than the Clerk) administering jurors' oath.

g) Failure to object to certain State's exhibits.

h) Failure to introduce certain evidence (police report).

i) Failure to move to exclude certain witness testimony.

j) Failure to object to jury charge.

k) Failure to object to trial court answering question by jury.

l) Failure to object to trial court denying allocution to Petitioner.

## Ineffective Assistance of Appellate Counsel

m) Failure to raise on direct appeal a *Batson* issue.

n) Failure to raise on direct appeal the use of transcripts of tape recordings.

o) Failure to raise on direct appeal the trial court's refusal to allow a police detective to testify as an expert witness on gangs.

p) Failure to raise on direct appeal an alleged error by the trial court regarding contact between the victims' family and members of the jury venire.

q) Failure to raise on direct appeal the argument that Lamar was entitled to a new trial based on a 2006 change in self defense law which Lamar asserts applied retroactively to his case.

## Unconstitutionality of Alabama's Capital Murder Statutes

To the extent Lamar seeks to assert a ground for relief that does not fall within one of the above grounds, the Court finds that any such grounds lack the required specificity under Rule 32.6(b) and are summarily dismissed pursuant to Rule 32.7(d).

**I.      Ineffective Assistance of Trial and Appellate Counsel**

To prove ineffective assistance of counsel, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In *Hyde v. State*, 950 So.2d 344, 354 (Ala. Crim. App. 2006), the court of criminal appeals described the burden of proving ineffective assistance of counsel as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

The court in *Hyde* emphasized that a petitioner's burden of pleading under Rules 32.3 and [] 32.6(b) is heavy, and that bare allegations of deficient performance are insufficient to meet that burden. Most of Lamar's allegations of ineffective of counsel constitute "bare allegations of deficient performance" and, as shown below, none satisfy the *Strickland* test.

a)  <u>Failure to move to dismiss improper indictments</u>.

Lamar asserts that his convictions are void, arguing that the indictments underlying the convictions were based on unconstitutional statutes and failed to define the essential elements of the offenses for which he was convicted. Aside from the lack of merit concerning these assertions, it is apparent that Lamar's trial counsel did, in fact, move to dismiss the indictments on the very grounds now asserted by Lamar. (*See* Motion to Dismiss filed by Lamar's counsel on May 12, 2004.)

b)  <u>Failure to move to dismiss arbitrary and unconstitutional capital charges and for selective prosecution</u>.

Lamar states that he was targeted based on his race and discrimination because he is black and poor, while other similarly situated offenders who were able to afford attorneys were not prosecuted capitally. However, a Rule 32 petition "must contain a clear and specific statement of the grounds upon which relief is sought, *including full disclosure of the factual basis of those grounds*." *See* Ala. R. Crim. P. 32.6(b) (emphasis added). Here, Lamar has failed to provide any facts which indicate that the District Attorney engaged in discriminatory acts by investigating the offenses committed by Lamar and/or in submitting evidence to the grand jury. "A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." *See* Ala. R. Crim. P. 32.6(b). Thus, this allegation fails for lack of specificity.

Lamar also contends that the capital murder statutes (under which he was indicted and prosecuted) are arbitrary and unconstitutional. However, in *Dotch v. State*, 67 So.3d 936, 990-93 (Ala. Crim. App. 2010), the Alabama Court of Criminal Appeals reiterated the constitutionality of § 13A-5-40(a)(17) []. Counsel cannot be ineffective for failing to do something for which there is no legal basis. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

c) <u>Failure to move to quash non-representative jury venire</u>.

Lamar boldly asserts that there were no persons with a disability among the sixty person venire from which the jury was struck to hear his cases. Lamar presents no factual basis for this assertion. Even if true, Lamar presents no facts or legal support for how he was prejudiced by his counsel's failure to move to quash a venire lacking persons with a disability. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

d) <u>Poor strategy during juror selection process</u>.

Lamar complains that trial counsel successfully sought to exclude a juror for cause, later agreed the juror could serve, and eventually used a peremptory strike to exclude the juror. "Generally, '[a]n attorney's actions during voir dire are considered to be matters of trial strategy,' which 'cannot be the basis' of an ineffective assistance claim 'unless counsel's decision is . . . so ill chosen that it permeates the entire trial with obvious unfairness.'" *Washington v. State*, ___ So.3d ___, 2012 WL 1450543, *30 (Ala. Crim. App.). Nothing provided by Lamar suggests that his counsel's decisions concerning jury selection were based upon anything other than trial strategy, and there is no indication that their strategic decisions

permeated the trial with obvious unfairness. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

e) Failure to object to trial court not administering jurors' oath prior to voir dire.

Lamar blankly alleges that the trial court failed to administer the juror oath prior to the commencement of voir dire, and that his trial counsel erred by failing to object to the alleged lack of oath. The record in this case is silent as to whether the trial court administered the juror oath prior to the commencement of voir dire. Unfortunately, without a written record, it seems unlikely that this Court will be able to divine whether Lamar's bald assertion is correct: the trial judge (Herman Thomas) no longer holds office, the court reporter no longer reports and, because the trial occurred over seven years ago, it is almost inconceivable that Lamar's attorneys or anyone else could provide reliable testimony on the issue.

In *Fortner v. State,* 825 So.2d 876, 879-80 (Ala. Crim. App. 2001), the Alabama Court of Criminal Appeals correctly opined that the Alabama Supreme Court in *Ex parte Hamlett,* 815 So.2d 499 (Ala. 2000) effectively overturned precedent which had held an appellate court could presume from a silent record that a jury venire had been sworn. Since a presumption that a jury venire had been sworn cannot be made from a silent record, the Court is left with substantively addressing Lamar's claim.

In *Ex parte Benford,* 935 So.2d 421, 429-30 (Ala. 2006), the Alabama Supreme Court noted that "there is a difference in a situation in which no oath is given to jurors at all and a situation in which there is merely a defect in the oath." *Id.* (citing *Ex parte Deramus,* 721 So.2d 242, 244 (Ala. 1998)). The court explained that if either the oath to the venire or the oath to the petit jury is given, that is a "defective-oath situation." *Id.* The court contrasted a "defective-oath situation" from a situation in which neither the oath to the venire or oath to [the] petit jury is given, which the court described as a "no-oath-at-all situation." *Id.* The significance of distinguishing between the two situations is that a claim based on a "no-oath-at-all situation" is jurisdictional, while a claim based on a defective-oath situation is nonjurisdictional. *Id.*

The situation at hand is the nonjurisdictional "defective-oath situation" since (as addressed below) the record is clear that the oath to the petit jury was given. However, because Lamar has dressed his claim as constituting ineffective assistance of counsel, the Alabama Court of Criminal Appeals has determined that the claim cannot be waived. *See*

*Wilson v. State,* 845 So.2d 2, 4-5 (Ala. Crim. App. 2002); *see also Fortner v. State,* 825 So.2d 876, 879-80 (Ala. Crim. App. 2001).

Although not waivable, the claim must be analyzed under the ineffective assistance of counsel rubric. As such, Lamar "must show that the deficient performance prejudiced the defense." *Hyde v. State,* 950 So.2d 344, 354 (Ala. Crim. App. 2006) (*quoting Strickland v. Washington,* 466 U.S. 668, 687 (1984)). That is, the error must be so serious "as to deprive the defendant of a fair trial." *Id.* Here, Lamar has failed to make such a showing. There is no showing that an unsworn jury somehow impacted the result of his trial. In *Lott v. State,* 826 So.2d 457 (1st Dist. Ct. App. 2002), a Florida court addressed the same issue as follows:

> The defendant is unable to show prejudice arising from his counsel's silence in the face of the trial court's failure to administer the oath, because he cannot show that the results of the proceeding would have been different had counsel objected. He does not claim, for example, that an unsworn juror provided false information and that the defendant would likely have prevailed at trial with a different juror.

*Id.* at 459. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

   f)   Failure to object to trial court (rather than the Clerk)
        administering jurors' oath.

The case action summary sheet for Lamar's case reflects that the jury was "sworn in" on May 17, 2005. (*See* Case Action Summary, p.6). Citing § 12-16-170 of the Code of Alabama, Lamar alleges he was denied effective assistance of trial counsel because counsel failed to object to the oath being administered to the petit jury by the trial court instead of by the clerk. The record is not clear whether it was the clerk or the trial court who swore in the jury. But, in any event, a trial court is authorized to either remind the jurors that they are still under a previously administered oath, or give the jurors the proper oath. *See* Ala.R.Crim.P. 18.5(a). The entry in the case action summary sheet for Lamar's case is sufficient to show that the jury was properly administered their oath. *See, e.g., Abbott v. State,* 494 So.2d 789, 791 (Ala. Crim. App. 1986). Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

   g)   Failure to object to certain State's exhibits.

Lamar alleges his trial counsel was ineffective because they failed to object to State's exhibits 9A, 10, 11, 13, 14, and 15 on the grounds that no chain of custody was established and there was a reasonable probability that the evidence was tampered with. First, Lamar offers no facts to substantiate his allegation of evidence tampering, and that allegation fails the specificity requirement of Rule 32.6(b). Likewise, his complaint regarding the lack of objection to certain State exhibits does not meet the specificity requirement of Rule 32.6(b).

Furthermore, objections to evidence are generally a matter of trial strategy and "absent a clear showing of improper or inadequate representation, are to be left to the judgment of trial counsel." *See Haynes v. State,* 461 So.2d 869, 874 (Ala. Crim. App. 1984); *see also Zeigler v. State,* 443 So.2d 1303, 1307 (Ala. Crim. App. 1983); *King v. State,* 518 So.2d 191, 196 (Ala. Crim. App. 1987). The failure to object does not in and of itself constitute ineffective assistance of counsel. *See Stanford v. State,* 442 So.2d 167, 169 (Ala. Crim. App. 1983). The failure of counsel to object to hearsay evidence does not necessarily render counsel ineffective; the attorney's failure to act must cause the trial to be reduced to "a farce, sham, or mockery of justice." *Id.* at 169-70 (*quoting Woodyard v. State,* 428 So.2d 136, 138 (Ala. Cr. App. 1982)). "No particular decision, even if it is a bad decision, is in itself proof that counsel's performance fell below acceptable professional standards." *See Graham v. State,* 593 So.2d 162, 166 (Ala. Crim. App. 1991). The decision might have been tactical, and appellate courts will not second guess such trial tactics. *Id.* Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

h) Failure to introduce certain evidence (police report).

Lamar complains that his trial counsel failed to introduce into evidence a police report, which Lamar asserts would have impeached a State witness. However, the State filed a motion in limine requesting that this information be kept out of the trial. (*See* State's Exhibit "B.") The trial court granted the request as to voir dire and opening statements and reserved the right to rule on this matter during trial as it became relevant. (*See* State's Exhibit "C.") There is no indication that this information ever became relevant during the trial of this matter, and there is nothing which indicates that had the report been introduced it would have changed the outcome of the proceeding. Additionally, "decisions regarding . . . what evidence to introduce are matters of trial strategy and tactics." *See Ross v. State,* 573 S.E.2d 465, 469 (2002). Trial counsel may reasonably avoid presenting evidence that counsel believes may do more harm than good. *A.G. v. State,* 989 So.2d 1167, 1176 (Ala. Crim. App. 2007). Accordingly,

Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

i) <u>Failure to move to exclude certain witness testimony</u>.

Lamar alleges his trial counsel were ineffective because counsel failed to object and/or move to exclude the testimony of state witness Jay Birch on the grounds that he was not declared an expert witness and that the Global Tel-link system is not reliable. A review of the record reveals that Jay Birch testified as a fact witness, not an expert witness. (*See* State's Exhibit "D.") Thus, with respect to this contention, Lamar failed to state a claim or provide a material issue of fact or law that would entitle him to relief, and he failed to meet the *Strickland* test of ineffective assistance of counsel.

j) <u>Failure to object to jury charge</u>.

Lamar alleges trial counsel were ineffective because they failed to object to the trial court's jury charge regarding the elements of the capital murder charge set out in § 13A-5-40(a)(10) of the Code of Alabama. Specifically, Lamar alleges the charge is confusing and that the trial court failed to define the phrase "by one act or pursuant to one scheme or cour[se] of conduct." However, five years before Lamar's trial, in *Wilson v. State*, 777 So.2d 856, 886 (Ala. Crim. App. 1999), the Alabama Court of Criminal Appeals rejected this precise argument. In *Wilson* the court explained that the phrase "single scheme or course of conduct" is not so technical that the jurors could not use their common sense to interpret and understand it. *Id*. Thus, Lamar's counsel cannot be ineffective for failing to do something for which there is no legal basis. *See Patrick v. State*, 680 So.2d 959, 963 (Ala. Crim. App. 1996). Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

Lamar also alleges that the trial court confused the jury when the court instructed the jury on the lesser included offense of manslaughter as to victim Michael Allison, where the trial court inadvertently stated "murder" instead of "manslaughter." Lamar is correct that the trial court mistakenly said murder instead of manslaughter while instructing the jury. However, the trial court corrected the statement on the record. (*See* State's Exhibit "E.") There is no indication that the corrected mistake confused the jury or that the representation by Lamar's counsel was deficient and prejudicial in connection with the jury instruction. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

k) <u>Failure to object to trial court answering question by jury</u>.

Lamar alleges in his original petition and several amendments that both his trial and appellate counsel were ineffective concerning the trial court's alleged improper contact with the jury. Specifically, Lamar alleges the trial court had an *ex parte* communication with the jury while neither he nor [his] counsel were in court. This allegation is deficient on its face. Lamar's trial counsel could not have objected to conduct of which they were unaware, and therefore could not have performed deficiently. Further, Lamar states no basis for how he was supposedly prejudiced by the trial court's alleged improper contact with the jury. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

l) <u>Failure to object to trial court denying allocution to Petitioner</u>.

Lamar alleges he was denied effective assistance of trial counsel because counsel failed to object to the trial court's alleged failure to allow Lamar allocution prior to sentencing. However, the record reflects that on July 29, 2005, during sentencing, the trial court asked [] Lamar if he wanted to say anything before sentence was imposed and Lamar responded in the negative. (*See* State's Exhibit "F.") On August 25, 2005, after the trial court realized that sentence had been imposed only on the first count, the court imposed sentences [o]n the other two counts for which Lamar had been convicted. The August 25, 2005 proceeding was not a new sentencing proceeding; it was only a continuation of the sentencing of Lamar – at which Lamar indisputably received the opportunity to allocate. Thus, Lamar's counsel cannot be ineffective for failing to do something for which there is no legal basis. *See Patrick,* 680 So.2d at 963. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim.

m) <u>Failure to raise on direct appeal a *Batson* issue</u>.

Lamar alleges he was denied effective assistance of appellate counsel where appellate counsel failed to raise a *Batson* challenge on appeal. A trial court's ruling on a *Batson* challenge is entitled to great deference and the appellate courts will not reverse that ruling unless it is clearly erroneous. *See Bryant v. State,* 951 So.2d 732, 740 (Ala. Crim. App. 2003) (citing *Ex parte Branch,* 526 So.2d 609, 625 (Ala. 1987)). In this case, Lamar's counsel successfully challenged the State's striking of at least one black juror from the panel. There is nothing in the record which indicates that the trial court abused its discretion in denying the *Batson* challenge as to the other strikes by the State or that the State failed to provide race neutral reasons for striking the other black venire members. Thus, Lamar's

appellate counsel cannot be ineffective for failing to do something for which there is no legal basis. *See Patrick,* 680 So.2d at 963. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

n) <u>Failure to raise on direct appeal the use of transcripts of tape recordings</u>.

Lamar alleges he was denied effective assistance of appellate counsel, claiming appellate counsel failed to challenge the use of transcripts of the jail recordings because said use was confusing to the jury. Lamar fails to provide any facts to substantiate his conclusory allegation that the jury was confused by using the transcripts as an aid during the trial. Thus, this allegation fails for lack of specificity. *See* Ala.R.Crim.P. 32.6(b). Additionally, the transcript was only provided to the jury as an aid and was not offered into evidence. The Alabama Court of Criminal Appeals has opined that the use of a transcript as an aid is permissible. *See Blanton v. State,* 886 So.2d 850, 865-66 (Ala. Crim. App. 2003). Thus, Lamar's appellate counsel cannot be ineffective for failing to do something for which there is no legal basis. *See Patrick,* 680 So.2d at 963. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

o) <u>Failure to raise on direct appeal the trial court's refusal to allow a police detective to testify as an expert witness on gangs</u>.

Lamar alleges ineffective assistance of appellate counsel because he failed to raise on appeal the trial court's denial of Lamar's request to question Dale Leddick as an expert on gang activity and characteristics. The determination whether a person is qualified to testify as an expert is well within the discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion. *See Kennedy v. State,* 929 So.2d 515, 518 (Ala. Crim. App. 2005) (citing *Bailey v. State,* 574 So.2d 1001, 1003 (Ala. Crim. App. 1990)). The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. There is no indication that the trial court abused its discretion in refusing to allow Dale Leddick to testify as an expert in gang activities. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

p) <u>Failure to raise on direct appeal an alleged error by the trial court regarding contact between the victims' family and members of the jury venire</u>.

Lamar alleges he was denied effective assistance of appellate counsel because counsel failed to raise a claim challenging the trial court's handling of contact between members of the jury and the victim[]s['] family. After Lamar informed the trial court there was some sort of improper contact between the jurors and the victim[]s['] family, the trial court spoke with the jurors in question who denied that there was any improper contact between them and the victim[]s['] family. (*See* State's Exhibit "G.") Lamar has failed to provide any information which would call into doubt the statements by these jurors or that the trial court erred in his handling of the matter. Accordingly, Lamar has failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel.

q) <u>Failure to raise on direct appeal the argument that Lamar was entitled to a new trial based on a 2006 change in self defense law which Lamar asserts applied retroactively to his case</u>.

Lamar alleges he was denied effective assistance of appellate counsel because appellate counsel failed to argue the doctrine of retroactivity with respect to a then recently amended self defense law. However, in its memorandum opinion, the Alabama Court of Criminal Appeals addressed this very issue, and rejected it. (*See* Memorandum Opinion, pp. 15-16.) Thus, this claim is precluded from review. Rule 32.2(a)(4) precludes a ground "[w]hich was raised or addressed on appeal . . . ." Ala.R.Crim.P. 32.2(a)(4). Accordingly, Rule 32(a) precludes this Court's review of this claim, and this claim is due to be summarily dismissed on that basis. *See* Ala.R.Crim.P. 32.7(d).

## II. **Unconstitutionality of Alabama's Capital Murder Statutes**

Lamar alleges the capital murder statute is unconstitutional and void because it was enacted by the Alabama Law Institute in violation of the separation of powers doctrine. Lamar also alleges § 13A-5-40(a)(10), Code of Alabama, (1975) is void and unconstitutional because it fails to define the aggravating circumstances that enhance it to [a] capital offense. However, "[a] constitutional challenge is nonjurisdictional and therefore subject to the procedural bars set forth in Rule 32." *Abrams v. State,* 978 So.2d 794, 795 (Ala. Crim. App. 2006). Thus, Lamar's claims based on constitutional challenges are precluded because they could have been raised at trial or on appeal. *See* Ala.R.Crim.P. 32.2(a)(3) & (5).

.     .     .

Therefore, this Court is authorized to summarily dismiss the petition (including all amendments) without an evidentiary hearing because the grounds in the petition and amendments thereto are

precluded, fail to meet the test set out in *Strickland*, fail for lack of specificity or are without merit.

The Petition for Relief from Conviction or Sentence (including all amendments thereto) filed by Dennis Earl Lamar is **DISMISSED**.

(Doc. 13, Exhibit L, November 7, 2012 ORDER, at 2-16 (most footnotes omitted).)

The Alabama Court of Criminal Appeals affirmed the trial court's judgment by unpublished memorandum decision issued on May 24, 2013. (Doc. 13, Exhibit P.)[7] Petitioner's application for rehearing was overruled on June 21, 2013 (Doc. 13, Exhibit R), and the certificate of final judgment of affirmance was entered on July 10, 2013 (Doc. 13, Exhibit S). And while the respondent argues that "Lamar did not file a petition for writ of certiorari[]" (Doc. 10, at 3), such failure is not attributable to a wholesale failure on Lamar's part (*see* Doc. 19, at 10-11 & Attached Exhibits). Indeed, Lamar has attached to his response to this Court's show cause order exhibits which establish that he met with a stone wall in his attempts—beginning on or about June 30, 2013—to obtain copies of the memorandum opinion of the Alabama Court of Criminal Appeals (or simply get his copy of that opinion back from prison officials) so he could file his petition for writ of certiorari. (*See* Doc. 19, Attached Exhibits.)[8] The exhibits petitioner has supplied the Court convince the undersigned that had Lamar been in possession of his copy of the

---

[7] There is no need for this Court to set out that decision at length since it is basically a "regurgitation" of the decision of the trial court. (*Compare* Doc. 13, Exhibit P, at 1-13 *with* Doc. 13, Exhibit L, November 7, 2012 ORDER.)

[8] The Alabama Rules of Appellate Procedure require a petition for writ of certiorari to contain several items, including "[a] copy of the opinion or the unpublished memorandum of the court of appeals, attached to the petition as an exhibit[.]" Ala.R.App.P. 39(d)(4).

appellate court's memorandum decision, or another copy of that decision, he would have timely filed his petition for writ of certiorari on July 4, 2013, rather than a futile motion for extension of time (*see* Doc. 19, Motion for Extension of Time for A[n] Application for Writ of Certiorari (signed by Lamar on July 4, 2013)).[9]

As previously indicated, Lamar filed his petition seeking habeas corpus relief in this Court on August 13, 2013. (Doc. 1, at 13.) Therein, petitioner raises the following issues which he claims entitle him to habeas corpus relief: (1) his convictions and sentences for three counts of capital murder for the murder of two victims violates the principles of double jeopardy; (2) he was denied the opportunity to give testimony on his own behalf in violation of the Due Process Clause; (3) the conduct of the prosecutor

---

[9]     On July 9, 2013, the Alabama Supreme Court's Clerk's Office responded to Lamar's request for an extension of time in the following manner:

> The Alabama Court of Criminal Appeals overruled your application for rehearing in Lamar v. State, CR-12-0344, on June 21, 2013. In order to obtain further review of your case, you were required to file a petition for a writ of certiorari with the Alabama Supreme Court on or before July 2, 2013. Rule 39(c)(2), Ala.R.App.P. The Alabama Supreme Court has no authority to extend the deadline for filing a petition for writ of certiorari "except in death cases." Rule 26(b), Ala.R.Crim.P.

(Doc. 19, July 9, 2013 Letter to Lamar.)   And while the information contained in the third sentence of this letter is correct, *see* Ala.R.App.P. 26(b) ("[T]he supreme court may not enlarge the time for filing a petition for certiorari to the courts of appeals[,] except in death cases."), the Clerk's Office for the Alabama Supreme Court improperly calculated the date upon which Lamar was required to file his petition for writ of certiorari to the Alabama Supreme Court. The letter correctly notes that Lamar's application for rehearing was overruled on June 21, 2013; however, properly excluding that day, *see* Ala.R.App.P. 26(a) ("In computing any period of time prescribed by these rules, by an order of court, or by any applicable statute, ***the day of the act, event***, or default from which the designated period of time begins to run ***shall not be included***."), and recognizing that the deadline for filing a petition for writ of certiorari is "within 14 days . . . of the decision of the Court of Criminal Appeals on the application for rehearing," Ala.R.App.P. 39(c)(2), the petition for writ of certiorari was due to be filed not later than July 5, 2013, not July 2, 2013.

in crying during his cross-examination rendered his trial fundamentally unfair; (4) the State's refusal to retroactively apply the 2006 amendment to Alabama's self-defense statute, Ala.Code § 13A-3-23, to his case violates due process; (5) his trial counsel provided ineffective assistance on twelve (12) different occasions;[10] (6) his appellate attorney erred in failing to raise seven different issues on appeal;[11] and (7) the trial court was without jurisdiction to render judgment or impose sentence because Alabama's Capital Murder Statute, Ala.Code § 13A-5-40, is unconstitutional.

---

[10]     Specifically, Lamar alleges his trial counsel were ineffective in: (a) failing to move to dismiss Count 1 of the indictment on the ground that the statute was void and unconstitutional due to its failure to define the essential element of "by one act or pursuant to one scheme or course of conduct;" (b) failing to move to dismiss Counts 2 and 3 of the indictment on the basis that those counts were based on the discriminatory and selective acts of the District Attorney in singling him out for capital treatment on the basis of his race; (c) failing to request that the trial court quash the 60-member jury venire on the basis that it did not contain any disabled persons; (d) moving to reinstate two potential jurors—Carter and Harpen—who had been successfully removed for cause and then being in the position of having to use a peremptory challenge to ultimately strike one of those jurors; (e) failing to object to the oath not being administered to the venire prior to *voir dire*; (f) failing to object to the oath being administered to the petit jurors by the trial judge, rather than the clerk; (g) failing to object to State's Exhibits 9A, 10, 11, 13, 14 and 15 on the basis that no chain of custody was established; (h) failing to introduce into evidence relevant parts of a police report related to Michael Allison in order to impeach the testimony of Bryan Edwards and support his claims of self-defense; (i) failing to object to and seek exclusion of the testimony of Jay Birch on the grounds that he was not qualified as an expert witness; (j) failing to object to the trial court's confusing and misleading jury charges (i.e., the trial court's failure to define "by one act or pursuant to one scheme or course of conduct" and the trial court's use of the term "murder" in charging the jury on manslaughter); (k) failing to move for a mistrial based upon the trial court's *ex parte* communication with the jury; and (l) failing to object to the trial court not allowing him to allocate prior to sentencing.

[11]     Lamar contends that his appellate counsel provided ineffective assistance in failing to raise on appeal the following issues: (m) a *Batson* challenge; (n) the fact that transcripts of the tape recordings were reviewed by the jury; (o) the trial court's refusal to allow his trial attorneys to try to qualify Dale Leddick as an expert on gang characteristics; (p) the trial court's ruling regarding alleged contact between petit jurors and members of the victims' family; (q) the *Teague v. Lane* doctrine of retroactivity as set out in *Ex parte Harris*; (r) trial counsel's failure to challenge the sufficiency of the evidence by motion for judgment of acquittal; and (s) the *ex parte* communication between the trial judge and the jury.

## CONCLUSIONS OF LAW

### A.     Procedural Default Doctrine.

In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id.* at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.    .    .

> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him.   (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id.* at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). Moreover, the presumption "looks through" unexplained orders to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*,[__ U.S., at __, 111 S.Ct., at 2559], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue. *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to

show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotation marks and citations omitted).

In his answer, respondent asserts that petitioner's ineffective assistance of trial and appellate counsel claims are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[I]n order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state.") due to Lamar's failure to raise these claims in a petition for writ of certiorari to the Alabama Supreme Court. (*See* Doc. 10, at 13-14).[12]

And while it is true that Lamar did not raise in a petition for writ of certiorari to the Alabama Supreme Court any of the many claims of ineffective assistance of trial and appellate counsel (as well as the claim that the trial court was without jurisdiction to render judgment or impose sentence due to the unconstitutionality of Alabama's Capital Murder Statute, Al. Code § 13A-5-40) he raised in his Rule 32 petition, as amended, and presented to the Circuit Court of Mobile County, Alabama and the Alabama Court of Criminal Appeals, it is clear to the undersigned that he attempted to raise those claims to Alabama's court of last resort but was prevented from doing so on account of the failure of prison officials to either return his copy of the appellate court's

---

[12]     This is the respondent's sole argument regarding why this Court is procedurally barred from reaching the merits of petitioner's claims of ineffective assistance of counsel. (*See id.*)

memorandum opinion (or make copies of that opinion) in a timely manner so that he could have filed his petition on July 4, 2013, as opposed to a motion for extension of time. Because such interference by state officials constitutes cause for Lamar's procedural default of his ineffective assistance of counsel claims, and the failure of this Court to consider these claims could arguably prejudice petitioner, this Court will address the merits of all claims raised in the instant petition, ***save for*** the claim that appellate counsel was ineffective in failing to raise on appeal the failure of trial counsel to challenge the sufficiency of the evidence by motion for judgment of acquittal (*see* Doc. 1, at 30).[13] *See McNair v. Campbell,* 416 F.3d 1291, 1302 & 1305 (11th Cir. 2005) ("Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. . . . In order to be exhausted, a federal claim must be fairly presented to the state courts. . . . [I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present

---

[13]     The undersigned would parenthetically note that this claim has no merit inasmuch as it is contradicted by the evidence of record in this case. Both following conclusion of the State's case-in-chief and after conclusion of all evidence, defense counsel moved for judgment of acquittal based on the State's failure to prove a prima facie case as to each count. (*Compare* Doc. 11, Exhibit A, T.T. 831 ("MR. HUGHES: Your Honor, if it please the Court, at this time, on behalf of the defendant, we would make a motion for a directed judgment of acquittal as to each count or all the counts and whatever is in each indictment on the following grounds, separately and severally. They have failed to prove a prima facie case on each count separately and severally. They have failed to prove each and every element of each alleged offense.") *with id.* at 973 ("MR. HUGHES: Judge, on behalf of the defendant, we would move as to each count, separate and severally, for a directed judgment of acquittal on the grounds that the State has failed to prove a prima facie case in each separate count. And we would likewise move for a directed judgment of acquittal on each lesser included offense that might be under the capital charge[s] or any of the other charges.").) Because the performance of Lamar's trial counsel was unassailable in this regard, appellate counsel was not deficient in failing to raise such non-meritorious issue on direct appeal. *See Searcy v. Florida Dep't of Corrections,* 485 Fed.Appx. 992, 996 (11th Cir. Aug. 9, 2012) ("Appellate counsel is not ineffective for failing to raise a nonmeritorious claim on direct appeal."), *cert. denied,* ___ U.S. ___, 133 S.Ct. 1314, 185 L.Ed.2d 194 (2013); *Bolender v. Singletary,* 16 F.3d 1547, 1573 (11th Cir.) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994).

the state courts with the *same* claim he urges upon the federal courts.' . . . It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar. . . . In such a situation, the Supreme Court has held that the petitioner has failed to properly exhaust his state court remedies and therefore has procedurally defaulted his claims. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999)."), *cert. denied,* 547 U.S. 1073, 126 S.Ct. 1828, 164 L.Ed.2d 522 (2006). In other words, this Court is procedurally barred from reaching the claim of ineffective assistance of appellate counsel identified above because that claim was not fairly presented to the state courts (*see* Doc. 13, Exhibit L, November 7, 2012 ORDER, at 13-15) and those same courts would now find the claim procedurally barred. *See Kelley v. Secretary for the Dep't of Corrections,* 377 F.3d 1317, 1344 & 1351 (11th Cir. 2004) ("[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. . . . Dismissing a mixed petition is of little utility [] when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred. In such a case, requiring the petitioner to return to state court only to make a futile application for relief simply delays the federal courts' adjudication of his petition."), *cert. denied,* 545 U.S. 1149, 125 S.Ct. 2962, 162 L.Ed.2d 906 (2005). Of course, petitioner cannot establish cause for his procedural fault of this claim of ineffective assistance of appellate counsel since he represented himself during the Rule 32 proceedings in state court and failed to present this claim to

the state courts for a ruling. *See, e.g., Harmon v. Barton*, 894 F.2d 1268, 1275 (11th Cir.)

("[T]here is no right to court-appointed counsel in state collateral proceedings . . .; thus,

a petitioner's 'failure to act or think like a lawyer cannot be cause for failing to assert a

claim.' . . . Where a pro se petitioner is able to raise an issue, 'it would be inequitable to

give him a "second bite at the apple" when he initially defaults the issue while we deny

a second chance to the petitioner whose counsel fails to raise the issue.'"), *cert. denied*,

498 U.S. 832, 111 S.Ct. 96, 112 L.Ed.2d 68 (1990).[14]

**B.**     **Merits Review of Claims Raised by Lamar**.

In accordance with the Antiterrorism and Effective Death Penalty Act

("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on

the merits in state court if that adjudication resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." *Cox v. McNeil*, 638 F.3d 1356,

1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker*, ___ U.S.

___, 132 S.Ct. 309, 181 L.Ed.2d 189 (2011); *see also Jones v. Secretary, Department of*

*Corrections*, 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal court may not

---

[14]     The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Lamar to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Lamar has not come forward with any new reliable evidence which establishes his actual innocence of the three counts of capital murder and two counts of attempted murder for which he was convicted by a jury of his peers on May 20, 2005. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the light of the record before the court, § 2254(d)(2)."[15]), *cert. denied sub nom. Jones v. Tucker*, ___ U.S. ___, 132 S.Ct. 590, 181 L.Ed.2d 433 (2011).[16]

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[15]   As amended, § 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

[16]   The Act presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see*

*Bottoson  v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) ("In addition, a state court decision

involves an unreasonable application of Supreme Court precedent 'if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new

context where it should not apply or unreasonably refuses to extend that principle to a

new context where it should apply.'"), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151

L.Ed.2d 270 (2001).

> "A state court decision is contrary to clearly established federal law
> if it applies a rule that contradicts the governing law set forth in Supreme
> Court cases or confronts facts that are materially indistinguishable from a
> relevant Supreme Court precedent and arrives at a result opposite to the
> Court's." *Windom v. Sec'y, Dep't of Corr.*, 578 F.3d 1227, 1247 (11th Cir.
> 2009) . . . . A state court decision involves an unreasonable application of
> federal law when "it identifies the correct legal rule from Supreme Court
> case law but unreasonably applies that rule to the facts of the petitioner's
> case. An unreasonable application may also occur if a state court
> unreasonably extends, or unreasonably declines to extend, a legal
> principle from Supreme Court case law to a new context." *Putnam v. Head*,
> 268 F.3d 1223, 1241 (11th Cir. 2001) . . . . The statutory phrase "clearly
> established Federal law" "refers to the holdings, as opposed to the dicta,
> of [the Supreme] Court's decisions as of the time of the relevant state-
> court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146
> L.Ed.2d 389 (2000).

*Spencer v. Secretary, Dep't of Corrections*, 609 F.3d 1170, 1177-1178 (11th Cir. 2010), *cert.*

*denied*, ___ U.S. ___, 131 S.Ct. 1049, 178 L.Ed.2d 869 (2011).

1.     __Double Jeopardy Claim.__  Petitioner's primary attack on his convictions

and sentences is his contention that "his convictions for three counts of [c]apital

[m]urder and sentences of [l]ife without [p]arole for the deaths of two individuals

violates the prohibition against Double Jeopardy. (Doc. 19, at 3; *see also id.* at 3-5; Doc. 1,

at 14.) Lamar was indicted and convicted of three counts of capital murder, as follows:

(1) intentionally causing the deaths of Eddie Moore and Michael Allison, by shooting

each with a gun, by one act or pursuant to one scheme or course of conduct, in violation

of § 13A-5-40(a)(10); (2) intentionally causing the death of Eddie Moore, by shooting him with a gun while he was in a vehicle, in violation of § 13A-5-40(a)(17); and (3) intentionally causing the death of Michael Allison, by shooting him with a gun while he was in a vehicle, in violation of § 13A-5-40(a)(17). (*Compare* Doc. 10, Exhibit A, INDICTMENT *with* Doc. 11, Exhibit A, T.T. 1106-1108.)

Lamar raised this double jeopardy claim on direct appeal and the Alabama Court of Criminal Appeals found the claim non-meritorious. (Doc. 12, Exhibit F, at 3-4.) The appellate court recognizing the governing principles of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (*see id.* at 4) and then performed the following analysis:

> Lamar was convicted of two counts of murder made capital because the victim was in a vehicle; however, each count involved a different victim and, thus, each required an element that the other did not. Lamar was also convicted of one count of murder made capital because two persons were murdered by one act or pursuant to one scheme or course of conduct. Although this count involved the same two victims as the other two counts, it clearly required an element that the other two counts did not. Thus, because each of the three counts of capital murder required an element that the others did not, Lamar's convictions and sentences for three counts of capital murder for the murders of two victims did not violate double-jeopardy principles.

(*Id.*) This holding by the Alabama Court of Criminal Appeals is consistent with other similar cases decided both before and after the decision of Alabama's appellate court in this case. *Compare Billups v. State,* 72 So.3d 122, 127, 128, 128-129 & 129 (Ala. Crim. App. 2010) ("The indictment against Billups contained 13 counts and alleged that Billups caused the death of four victims: Gomez, Marquez, Salcedo, and Perez. The indictment included four counts—one for each victim—of each of the following: intentional murder during the commission of first-degree robbery, § 13A-5-40(a)(2), Ala.Code 1975; intentional murder during the commission of first- or second-degree burglary, § 13A-5-

41

40(a)(4), Ala.Code 1975; and intentional murder during the commission of first-degree kidnapping, § 13A-5-40(a)(1), Ala.Code 1975. In addition to those 12 counts, the indictment charged Billups with murder made capital because he killed the four victims by one act or pursuant to one scheme or course of conduct, § 13A-5-40(a)(10), Ala.Code 1975. . . . Regarding Billups's double-jeopardy claim, this Court has repeatedly held that multiple capital-murder convictions can be based on the death of one victim. Our Supreme Court addressed the merits of a claim similar to Billups's claim in *Ex parte Peraita,* 897 So.2d 1227 (Ala. 2004). In *Peraita, supra,* the defendant was indicted for two counts of capital murder for the death of one individual. . . . 'In contrast to *Meyer* and *Rice*, the two capital-murder charges against Peraita are separate offenses. Each count of capital murder is a separate offense, as shown by the beginning of the statute defining capital offenses, which provides, "The following are capital offenses." Ala.Code 1975, § 13A-5-40(a). So long as each count of the crime concerns a separate offense, as opposed to a separate method of proving that offense, the double-jeopardy provision of the United States Constitution is not implicated. We hold that Peraita's right to be free from double jeopardy was not violated by his having been tried and convicted of two counts of capital murder for the killing of one individual.' . . . In separate counts of the indictment, Billups was charged with four counts of murder made capital because it was committed during the course of a first-degree robbery; four counts of murder made capital because it was committed during the course of a first- or second-degree burglary; and four counts of murder made capital because it was committed during the course of a first-degree kidnapping. The final count of the indictment charged Billups with the murder of two or more people pursuant to one act or course of conduct. In keeping with *Peraita, supra,* and *Powell, supra,* Billups was indicted for multiple counts

42

of capital murder for each of the four victims in the instant case. Therefore, the charges in the indictment were not multiplicitous, and Billups's convictions for 13 counts of capital murder did not violate double-jeopardy principles."), *cert. denied,* ___ U.S. ___, 132 S.Ct. 760, 181 L.Ed.2d 490 (2011), *with Castillo v. State,* 925 So.2d 284, 288 (Ala. Crim. App. 2005) ("Here, just as in *Wynn* and *Living,* counts four and five were simply alternative methods of proving the single offense of the capital murder of Kenneth Holmes committed during a burglary. Likewise, counts six and seven were simply alternative methods of proving the single offense of the capital murder of Belinda Holmes committed during a burglary, and counts eight and nine were alternative methods of proving the single offense of the capital murder of Christian Holmes committed during a burglary. Even if Castillo had received but a single sentence for all of the capital-murder convictions, the mere fact that he was convicted of six counts of burglary-murder violates the Double Jeopardy Clause. . . . Accordingly, Castillo's conviction as to all six counts of burglary-murder cannot stand. *However, because counts ten and eleven contained an element not found in counts four through nine—murder committed by one act or pursuant to one scheme or course of conduct and murder when the victim is less than 14 years of age—Castillo's convictions for counts ten and eleven do not violate the prohibition against double jeopardy. . . . The convictions on six alternative counts of burglary-murder cannot stand. However, three convictions for burglary-murder have been proven—one for each of the three victims—and may stand.* Accordingly, this case must be remanded for the trial court to enter an order that adjudges Castillo guilty of three counts of the capital offense of murder committed during the course of a burglary." (emphasis supplied)).

The Double Jeopardy Clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This Clause affords three protections to every criminal defendant: (1) it protects "against a second prosecution of the same offense after acquittal[;]" (2) it protects "against a second prosecution for the same offense after conviction[;]" and (3) it protects against "'multiple punishments for the same offense' imposed in a single proceeding." *Jones v. Thomas*, 491 U.S. 376, 380, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989) (citations omitted). It is this third protection, that is multiple punishments for the same offense imposed during a single proceeding, that is at issue in the present case. *Compare North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (the Double Jeopardy Clause protects against "multiple punishments for the same offense"), *overruled on other grounds by Jones v. Thomas, supra, with Blockburger, supra*, 284 U.S. at 304, 52 S.Ct. at 182 ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

Lamar does nothing more than make the very general argument that his three capital murder convictions and sentences (of life without parole) for the shooting deaths of two persons violates double jeopardy principles against multiple convictions and punishments arising out of a single crime, that is, the shooting deaths of two individuals. (Doc. 19, at 5; *see also* Doc. 1, at 14.)

> Because of the structuring of the indictment, each crime was covered by two separate counts. Count one combined both acts into a single count. Count[s] two and three separately charged each criminal act under a different subsection of the capital murder statute.

(Doc. 19, at 5; *see also* Doc. 1, at 14 ("Double jeopardy principles prohibit[] multiple convictions and multiple sentences for a single killing.").) The Court understands

44

Lamar to be making the argument that the elements necessary to convict him under §

13A-5-40(a)(10) of the Alabama Code were the same elements necessary to convict him

under the two counts of murder while each victim was in a vehicle. (*See id.*)[17] As

recognized by the United States District Court for the Northern District of Alabama in

*Taylor v. Culliver,* 2012 WL 4479151, *112 (N.D. Ala. Sept. 26, 2012), the petitioner's

argument in this regard "suffers from faulty logic."

> He fails to recognize that § 13A-5-40(a)(10) requires the "[m]urder [of] two
> or more persons." In other words, a defendant must have committed two
> separate offenses before he or she is subject to this additional and distinct
> capital offense. Viewed this way, [petitioner's] conviction under sub-
> paragraph (a)(10) did not subject him to "multiple punishments for the
> *same offense,*" *Pearce,* 395 U.S. at 717 . . .; rather, his conviction under (a)(10)
> resulted from the combination of two offenses, *i.e.,* an additional element.

*Id*. Thus, Lamar did not receive "multiple punishments for the same offense." *Pearce,*

*supra,* 395 U.S. at 717, 89 S.Ct. at 2076. Instead, he received one punishment for the

offense of killing Eddie Moore while he was in a vehicle, pursuant to § 13A-5-40(17), a

second punishment for the offense of killing Michael Allison while he was in a vehicle,

pursuant to § 13A-5-40(17), and a third punishment for the offense of killing both

Moore and Allison, that is, two or more persons, by "one act or pursuant to one scheme

or course of conduct," as set forth in § 13A-5-40(a)(10). Accordingly, the ruling by the

Alabama Court of Criminal Appeals that "Lamar's convictions and sentences for three

counts of capital murder for the murders of two victims did not violate double-jeopardy

principles[,]" (Doc. 12, Exhibit F, at 4) is neither "contrary to" nor does it involve an

---

[17]     To the extent petitioner intends to make the additional argument that his
convictions and sentences as to Counts Two and Three cannot stand, this argument is blatantly
incorrect as each count required proof of an element that the other did not; that is, Count Two
required proof that Lamar intentionally caused the death of **Eddie Moore** by shooting him with a
gun while he was in a vehicle, while Count Three required proof that Lamar intentionally caused
the death of **Michael Allison** by shooting him with a gun while he was in a vehicle.

unreasonable application of clearly established federal law. *Compare Taylor, supra,* at *
112 *with Rutherford v. Crosby,* 385 F.3d 1300, 1306-1308 (11th Cir. 2004) (review of a
Double Jeopardy claim in the context of 28 U.S.C. § 2254(d)), *cert. denied,* 544 U.S. 982,
125 S.Ct. 1847, 161 L.Ed.2d 738 (2005).

      2.      **Alleged Denial of Opportunity to Give Testimony on his own Behalf.**
Lamar contends that he was deprived of his rights to due process and a fundamentally
fair trial when the trial court deprived him of the opportunity to explain, on redirect
examination, certain statements and comments he made in the various recorded
telephone conversations admitted into evidence after the State subjected him to
extensive cross-examination concerning those very comments and statements. (Doc. 1,
at 15; *see also* Doc. 12, Exhibit F, at 5 ("Lamar contends that the trial court erred in not
allowing him to explain, on redirect examination, comments he made during telephone
conversations made from the jail after his arrest. He maintains that he should have been
allowed to explain his comments in order to rebut the inferences raised by the State
during cross-examination.").) According to petitioner, his "credibility was a critical
factor at trial, and the telephone conversations were used by the prosecution to mount
its attack on petitioner." (Doc. 1, at 15.)

      The undersigned will not again outline the questioning of Lamar on redirect
examination by one of his attorneys or the specific rulings by the trial court because that
information can be garnered by a review of that portion of the decision of the Alabama
Court of Criminal Appeals central to this issue as set forth above. Suffice it to say that
the Alabama Court of Criminal Appeals found no merit to this claim and, more
specifically, "no error on the part of the trial court in sustaining the objections lodged by
the State nor do we find that Lamar was denied an opportunity to explain his

comments." (Doc. 12, Exhibit F, at 11.)

Here, all of the State's objections were lodged when counsel attempted to question Lamar about the conversation he had with Mose wherein Lamar repeatedly asked Mose to tell him what Mose had told the police regarding the shooting, the conversation that the prosecutor used to raise the inference of a cover-up. That particular conversation, however, had been thoroughly covered during the prosecutor's cross-examination of Lamar and Lamar had been allowed to explain the comments he had made during that conversation, and had repeatedly denied the existence of, or any involvement in, any type of cover-up.[18] The trial court did not err in refusing to permit repetitious testimony on this subject.

Moreover, when the trial court ruled on the State's initial objection, the court indicated that it would allow specific questions regarding Lamar's mental operation with respect to certain comments, and counsel questioned Lamar, without objection, about what he meant when he commented on murdering Mose and Jackson and about what he meant when he made comments about his lawyer.[19] Furthermore, during cross-examination, Lamar had the opportunity to explain the several arguably inculpatory comments that he had made during the telephone calls, and he offered various explanations regarding the meaning of those comments.[20] When Lamar made his proffer to the trial court, he did not

[18]     Indeed, not only did Lamar on three occasions explain and deny any type of cover-up (Doc. 11, Exhibit A, T.T. 932, 935 & 938), but, as well, the trial court did not allow the prosecution to ask the main question she wanted to ask of petitioner in this regard (*see id.* at T.T. 937-938). More importantly, on redirect examination, before the prosecutor started objecting to questions posed by defense counsel, Lamar was able to explain that he had no conversation with Mose from July 29, 2003 until the taped-recorded conversation on August 9, 2003 and that during that conversation only Mose spoke of a cover-up, not him, and he would not have had an opportunity to know about any alleged cover-up between Mose and Jackson (Doc. 11, Exhibit A, T.T. 961-964).

[19]     Lamar was allowed to testify that he did not have any way to order anybody to be killed and was allowed to explain that when he made the comment to his girlfriend he "was [] mad and said it out of [his] brain." (Doc. 11, Exhibit A, T.T. 967-968.) In addition, he was allowed to explain his comment to Mose to "Tell the motherfucking lawyers what time it is[.]" (*Id.* at 968 (Lamar's testimony that this comment simply meant that he wanted Mose "to talk to my lawyer.").)

[20]     For instance, Lamar explained that he was not ordering the murders of Mose, Kia Jackson, and PamTinsley with various comments he made during one taped conversation with his girlfriend (*see* Doc. 11, Exhibit A, T.T. 940-942): "No, ma'am, I wanted them to talk to them lawyers to be witnesses, because they seen what happened. They was standing out there when it went down, that's also what I meant by telling Jeffrey and them that." (*Id.* at 942.) In addition, he explained that what he meant by "All he [Mose] had to do was shut his mouth and be quiet and stay cool" was that he wanted Mose "to wait until [Lamar] talked to my lawyer." (*Id.*)

allege what additional comments he made during the telephone calls that he wanted to explain or what his explanation of those comments would have been; he merely made a general assertion that he was denied the opportunity to explain his comments. . . . Likewise, Lamar does not allege in his brief on appeal what other comments he made during the telephone calls that he wanted to explain or what his explanation would have been.

(*Id.* at 10-11 (footnotes added).)

It is clear that "[f]ederal habeas corpus relief based on evidentiary rulings will not be granted unless it goes to the fundamental fairness of the trial." *McCoy v. Newsome,* 953 F.2d 1252, 1265 (11th Cir.), *cert. denied,* 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). Indeed, the state trial court error must have been "material in the sense of a crucial, critical, highly significant factor." *Tejada v. Dugger,* 941 F.2d 1551, 1560 (11th Cir. 1991) (quotation marks and citations omitted), *cert. denied,* 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *see Snowden v. Singletary,* 135 F.3d 732, 737 (11th Cir. 1998) ("A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'"), *cert. denied,* 525 U.S. 963, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998).

The undersigned initially notes that petitioner has failed to establish that the trial court made an erroneous ruling in sustaining certain objections by the prosecutor. Certainly, the Alabama Court of Criminal Appeals felt there was no error made by the trial court and petitioner has cited to absolutely no Supreme Court precedent which suggests that the trial court's rulings were erroneous.[21]  Nevertheless, even assuming an

---

[21]     Petitioner's citation to *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) provides no assistance in this regard inasmuch as under attack in that case was the *per se* rule in Arkansas "excluding a criminal defendant's hypnotically refreshed testimony." *Id.* at 49, 107 S.Ct. at 2708.

        The Arkansas rule enunciated by the state courts does not allow a trial court to consider whether posthypnosis testimony may be admissible in a (Continued)

48

error by the trial court on ruling upon the prosecutor's objections, such error did not render Lamar's trial fundamentally unfair for the numerous reasons to which the undersigned has already alluded. First, Lamar denied on no less that three occasions during his cross-examination that he pressured Mose and Kia Jackson into a cover-up; explained on redirect examination, before the prosecutor started objecting, that he had no conversation with Mose from the date of the shooting (July 29, 2003) until August 9, 2003 and during the taped telephone conversation only Mose spoke of a cover up, not him, and he would not have had an opportunity during the intervening time to know

<hr>

particular case; it is a *per se* rule prohibiting the admission at trial of any defendant's hypnotically refreshed testimony on the ground that such testimony is always unreliable. Thus, in Arkansas, an accused's testimony is limited to matters that he or she can prove were remembered *before* hypnosis. This rule operates to the detriment of any defendant who undergoes hypnosis, without regard to the reasons for it, the circumstances under which it took place, or any independent verification of the information it produced.

.        .        .

A State's legitimate interest in barring unreliable evidence does not extend to *per se* exclusions that may be reliable in an individual case. Wholesale inadmissibility of a defendant's testimony is an arbitrary restriction on the right to testify in the absence of clear evidence by the State repudiating the validity of all posthypnosis recollections.

.        .        .

Arkansas' *per se* rule excluding all posthypnosis testimony infringes impermissibly on the right of a defendant to testify on his own behalf.

*Id.* at 56, 61 & 62, 107 S.Ct. at 2711-2712 & 2714 (internal footnote omitted). As is clear from the trial transcript in this case, Alabama has no *per se* rule which infringes upon a defendant's right to testify on his own behalf, as was the case in *Rock, supra*. Instead, the trial court simply ruled upon the objections presented to it and did not disallow *in toto* Lamar's explanation of what he meant by certain comments on the tape-recorded telephone conversations he had with his girlfriend from the Mobile County Jail. Indeed, as even the majority recognized in *Rock*, "the right to present relevant testimony is not without limitation[,]" and "[n]umerous state procedural and evidentiary rules control the presentation of evidence and do not offend the defendant's right to testify." *Id.* at 55 & 55 n.11, 107 S.Ct. at 2711 & 2711 n.11. Thus, the holding in *Rock* has no application in this case.

about any alleged cover-up between Mose and Jackson (Doc. 11, Exhibit A, T.T. 961-964); explained, both on cross-examination and redirect examination, what he meant by comments on the tapes regarding "lawyers" and allegedly ordering the murders of Mose, Jackson, and other witnesses (Doc. 11, Exhibit A, T.T. 940-942 & 967-968); and has not pointed to any comments, other than the "cover-up" comments, that he would have explained if given an opportunity (and what the explanation would be). Moreover, the denial of any opportunity for Lamar to further explain the "cover-up" comments—beyond his abject denial of same and pre-objection explanation—did not impact the fairness of his trial particularly in light of Mose's clear and unequivocal testimony that Lamar did not ask him to cover-up anything. (Doc. 10, Exhibit A, T.T. 445.) Finally, to the extent the trial court did hamstring Lamar's ability to explain the "cover-up" comments, any error in this regard does not rise to the denial of fundamental fairness given that the most severe blow suffered by Lamar's self-defense argument was not any alleged "cover-up" but, instead, Lamar's own testimony that he "didn't see the gun exactly[]" with which victim Bryan Edwards was allegedly armed (Doc. 11, Exhibit A, T.T. 919)[22] and the clear testimony of police that no weapon was recovered from the scene (and surrounding area) of the multiple shooting (*see* Doc. 10, Exhibit A, T.T. 474-476 & 603-611; Doc. 11, Exhibit A, T.T. 699).

In light of the foregoing, the undersigned concludes that Lamar has not shown that the rejection of this claim by the Alabama Court of Criminal Appeals was contrary to, or constituted an unreasonable application of, clearly established Supreme Court law.

---

[22]      There is no question but that Lamar shot all four victims. (*See id*. at 894-896 & 922-927.)

3.    __Prosecutor Crying During Cross-Examination of Lamar.__ In this ground

of his petition, Lamar contends that he was denied a fair and impartial trial because the

trial court failed to grant a motion for mistrial based upon the prosecutor crying during

her cross-examination of petitioner. (Doc. 1, at 15.) A review of the trial transcript

reveals that during the prosecutor's cross-examination of Lamar, the following

occurred:

> Q    Did you see the Cat Scan of Sampson's brain?
>
> A    No, ma'am.
>
> Q    Were you in court when the doctor showed it?
>
> A    Yes, ma'am.
>
> Q    Did you see how the brain shifted?
>
> A    No, ma'am, I wasn't looking at that.
>
> MS. FRANCEZ:  Excuse me, Judge.
>
> MR. HUGHES:  Judge, can we approach?
>
> THE COURT:  No, we are going to finish this examination and we're fixin' to move on.
>
> Q    Did you see how Michael Allison was slumped in the car?
>
> A    No, ma'am, I couldn't see the pictures because you was showing them in the other direction.

(Doc. 11, Exhibit A, T.T. 953.) After completion of Lamar's testimony and outside the

presence of the jury, defense counsel moved for a mistrial. (*See id*. at 969-971 & 971.)

> MR. HUGHES:  -- during the State's cross examination of the defendant, Ms. Francez became visibly upset to the point that she was crying. At that point, I was going to approach the bench and ask for a mistrial, the Court told me, no, that . . . I couldn't come up there and we finished the cross examination. At this time, we would ask the Court to grant a mistrial in that the prosecutor's crying prejudices our client and would be an inflammatory sort of action on the State's part. I'm not saying she intended it or not, but

51

whatever, she was visibly upset and crying during part of the cross examination. She had to take a moment. I believe she said, Let me have a moment of I'm sorry or whatever it was, but in any event, we would ask the Court for a mistrial.

THE COURT: Mr. Furman.

MR. FURMAN: Judge, you can't factor her emotion out completely. During Mr. Hughes's examination of Bryan, I believe it was, he became visibly angry and just the same thing, I mean, I saw nothing that occurred during the examination that would warrant a mistrial in any way, from any of the jury, no reactions from anybody in the courtroom. What emotion, if any, Ms. Francez exhibited, certainly, there's been no showing that it prejudiced him in any way, that it's outside the bounds of what trial lawyers do.

THE COURT: Anything further from either side on that issue?

                    .        .        .

MR. DEEN: No. No. No.

THE COURT: Okay. Motion for a mistrial is denied.

(*Id.*) On appeal, the Alabama Court of Criminal Appeals found "no error on the part of the trial court in denying Lamar's motion for a mistrial[.]" (Doc. 12, Exhibit F, at 15.)

[T]he prosecutor's crying, when viewed in the context of the entire trial, was not so prejudicial as to warrant a mistrial. . . . The prosecutor's crying occurred during an intense cross-examination of Lamar regarding where each of the victims were located when they were shot. "It is unreasonable to expect that criminal trials will be conducted without some show of feeling." Johnson, 31 N.J. at 510, 158 A.2d at 23. Moreover, there is no indication that the jury was disturbed or distracted by the prosecutor's crying and, other than a bare allegation by Lamar, there is no indication that Lamar was prejudiced.

(*Id.*)

In order to prevail upon his due process claim, "petitioner must show that 'the prosecutor's actions were so egregious as to render the trial fundamentally unfair.'" *Collins v. Francis,* 728 F.2d 1322, 1338 (11th Cir.) (quoting *Hance v. Zant,* 696 F.2d 940, 951 (11th Cir. 1983)), *cert. denied,* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984); *see also*

*Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) ("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.' *Id.,* at 642, 94 S.Ct., at 1871."). Because prosecutorial misconduct normally occurs due to the alleged improper comments or remarks of a prosecutor during the course of a defendant's trial, the undersigned looks for guidance on how to properly analyze this claim from the Eleventh Circuit's opinion in *Spencer v. Secretary, Department of Corrections,* 609 F.3d 1170 (11th Cir. 2010).

> "To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Eyster,* 948 F.2d 1196, 1206 (11th Cir. 1991). . . . [D]ue process is denied only "when there is a reasonable probability," or "a probability sufficient to undermine confidence in the outcome," that, but for the offending remarks, "the outcome of the proceeding would have been different." *Eyster,* 948 F.2d at 1206-07 (citations and internal punctuation omitted). If the misconduct fails to render the trial fundamentally unfair, habeas relief is not available. *Land v. Allen,* 573 F.3d 1211, 1219 (11th Cir. 2009).

> In determining whether the act of misconduct rendered the trial fundamentally unfair, we measure the remark against the totality of the facts and circumstances. *Hall v. Wainwright,* 733 F.2d 766, 773 (11th Cir. 1984). "In determining whether arguments are sufficiently egregious to result in the denial of due process," facts such as the following may be considered: "(1) whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial court's instructions; and (4) the weight of aggravating and mitigating factors." *Land,* 573 F.3d at 1219-20. Moreover, we consider "the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused," and "the strength of the competent proof to establish the guilt of the accused." *Davis v. Zant,* 36 F.3d 1538, 1546 (11th Cir. 1994). Thus, where the evidence of guilt is overwhelming, an improper comment by a prosecutor usually does not render the trial fundamentally unfair in violation of the Constitution. *See*

*Land,* 573 F.3d at 1220.

*Id.* at 1182.

Here, the brief episode of crying by the prosecutor during the cross-examination of the defendant was not enough to render Lamar's trial fundamentally unfair. The crying episode was isolated, unintentional, and, again, brief. (*Compare* Doc. 11, Exhibit A, at T.T. 953 *with id.* at 969-971.) In addition, although the trial court would not allow defense counsel to approach the bench and "powered through" the brief moment needed by the prosecutor to regain her composure, there was no contemporaneous objection by defense counsel and, later, following denial of the motion for a mistrial, no request for a curative instruction. (*See id.*) Moreover, defense counsel did not counter the other prosecutor's comments in opposition to the motion for mistrial that his co-prosecutor's brief loss of composure evoked no reactions from anyone on the jury or from anyone in the courtroom. (*See id.* at 970.) Finally, it is important to note that the prosecutor's crying came during her questioning of Lamar regarding whether he had seen the CT scan showing how Sampson Moore's brain shifted (*see id.* at 953) and not during questioning related to petitioner's position that he shot Michael Allison, Eddie Moore, Bryan Edward, and Sampson Moore in self-defense, the only open issue in the case since there was no doubt but that Lamar was the lone shooter.

In light of the foregoing, the undersigned concludes that Lamar has not shown that the rejection of this claim of prosecutorial misconduct by the Alabama Court of Criminal Appeals was contrary to, or constituted an unreasonable application of, clearly established Supreme Court law. *Cf. Meza v. McDonald,* 2012 WL 2159912, *22 (C.D. Cal. May 18, 2012) ("We . . . conclude that this one isolated incident of sniffling or a display of emotion is insufficient to amount to prosecutorial misconduct under either the state

54

or federal standards."), *report and recommendation adopted,* 2012 WL 2159858 (C.D. Cal. Jun. 11, 2012).

**4.      State Refused to Retroactively Apply the 2006 Amendment to Alabama's Self-Defense Statute, § 13A-3-23, to His Case.** In this ground of the petition, Lamar alleges that the State's refusal to apply the 2006 amendment to Alabama's self-defense statute, § 13A-3-23, to his case violated his fundamental right to a fair trial. (Doc. 1, at 15-16.) The initial problem with petitioner's argument in this regard is that his criminal trial was conducted on May 17-20, 2005, more than one year prior to the effective date (June 1, 2006) of the amendment to § 13A-3-23, and there is no indication that the jury was improperly charged regarding self-defense;[23] therefore, *a fortiori,* his trial was not rendered fundamentally unfair due to the failure of the trial court to

---

[23]      The trial court charged the jury, in relevant part, as follows: "The defendant is not justified in using deadly physical force upon another person and cannot prevail on the issue of self-defense if it reasonably appears or the defendant knows that he can avoid the necessity of using such force with complete safety by retreating, except the defendant is not required to retreat if he is in his dwelling or his place of work and was not the original aggressor. The defendant does not have the burden of pro[v]ing that he acted in self-defense[.] [T]o the contrary[,] [o]nce self-defense becomes an issue, the State has the burden of proving, beyond a reasonable doubt, that the defendant did not act in self-defense. . . . A defendant who claims self-defense and justification of a shooting is entitled to rely upon the reasonable appearance of things at the time of the shooting[,] [e]ven if the person against whom the defendant used deadly physical force was not actually using or about to use unlawful deadly physical force. The defendant would be justified under the doctrine of self-defense if he reasonably believed that such other person was using or about to use unlawful deadly physical force." (Doc. 11, Exhibit A, T.T. 1092 & 1093.) There is no question—and petitioner asserts no argument to the contrary—that these instructions were a proper reflection of the defense of self-defense in Alabama both at the time the crimes were committed, on July 29, 2003, and at the time of petitioner's trial, May 17-20, 2005. *See, e.g.,* Ala. Code § 13A-3-23(b)(1) (2005 replacement vol.) ("[A] person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety . . . [b]y retreating[.]"). It was not until more than one year following petitioner's convictions (that is, effective June 1, 2006) that § 13A-3-23(b) was amended to recognize the right of an individual to "stand one's ground," as follows: "A person who is justified under subsection (a) in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground." *Id.* (2012 cum. supp.).

charge the jury in accordance with an amendment not enacted or in existence at the time of his trial.

To the extent, however, plaintiff means to suggest that this amendment should have been made retroactively applicable to his case on appeal and a new trial ordered—although he makes no mention of his appeal, retroactivity, or a new trial in this ground of his petition (*see* Doc. 1, at 15-16; *but cf.* Doc. 19, at 9)—the undersigned would simply note that Lamar has failed to make any showing that the adjudication of this issue by the Alabama Court of Criminal Appeals is contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Indeed, Lamar cites to no Supreme Court precedent applicable to this, or a similar issue, and this Court does not believe it exists inasmuch as the 2006 amendment to § 13A-3-23 is distinctly a matter of Alabama statutory law, there being no decision of the United States Supreme Court announcing a new rule of criminal procedure in this regard, *cf. Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989) ("In general, . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government."), such that the several decisions of the Alabama Court of Criminal Appeals—including in this case (Doc. 12, Exhibit F, at 16)—that this amendment is not retroactively applicable to crimes that occurred prior to the effective date of June 1, 2006 also distinctly involve matters of Alabama law. *Compare id. with White v. State,* 992 So.2d 783, 785 (Ala.Crim.App. 2007) ("It is well settled that unless the statute contains a clear expression to the contrary, the law in effect at the time of the commission of the offense governs the offense, the offender, and all proceedings incident thereto. In Alabama, retrospective application of a statute is generally not favored, absent an express statutory provision or clear

56

legislative intent that the enactment apply retroactively as well as prospectively. Generally, statutes are to be considered prospective, unless the language is such as to show that they were intended to be retrospective. This general rule is, however, subject to an equally well-established exception, namely, that remedial statutes . . . are not within the legal concept of retrospective laws, . . . and do operate retroactively, in the absence of language clearly showing a contrary intention. In other words, remedial legislation is generally applied retrospectively while substantive laws are limited to prospective application. The self-defense statute is clearly substantive, not remedial. Therefore, the amendment to § 13A-3-23 applies retroactively only if there is an express provision or clear legislative intent that it do so. We find no such provision or legislative intent. To the contrary, nothing in § 13A-3-23 or Act No. 2006-303, Ala. Acts 2006, specifically states that the amendment was to apply retroactively nor does anything in § 13A-3-23 or Act No. 2006-303 indicate an intent on the part of the legislature that the amendment apply retroactively. Accordingly, we hold that the amendment to § 13A-3-23 applies only to those crimes that occurred after June 1, 2006, its effective date. Because the amendment to § 13A-3-23 does not apply retroactively, the circuit court properly denied [petitioner's Rule 32] petition." (internal quotation marks, citations, footnote, and brackets omitted; some brackets added)). Because this Court knows of no clearly established federal law, as determined by the Supreme Court of the United States, to which the decision of the Alabama Court of Criminal Appeals is contrary to, or involves an unreasonable application of, the appellate court's decision (Doc. 12, Exhibit F) controls disposition of this ground of the petition such that Lamar is entitled to no federal habeas corpus relief. Stated differently, "'[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question

of a constitutional nature is involved.'" *Carroll v. Secretary, DOC,* 574 F.3d 1354, 1365 (11th Cir.) (quoting *McCullough v. Singletary,* 967 F.2d 530, 535 (11th Cir. 1992)), *cert. denied*, 558 U.S. 995, 130 S.Ct. 500, 175 L.Ed.2d 355 (2009).

5.   **Ineffective Assistance of Trial and Appellate Counsel Claims.**   For purposes of this Court's § 2254(d) analysis, this case initially requires the undersigned to consider whether all claims of ineffective assistance of trial and appellate counsel raised by Lamar in the state courts of Alabama were decided on the merits. With respect to some of petitioner's claims of ineffective assistance of trial and appellate counsel, of course, the state courts of Alabama determined that Lamar was entitled to no relief because of his failure to sufficiently plead such claims under Rule 32.6(b) of the Alabama Rules of Criminal Procedure.[24] (*Compare, e.g.,* Doc. 13, Exhibit L, November 7, 2012 ORDER *with id.,* Exhibit P.) The Eleventh Circuit has recognized that adjudications under Rule 32.6(b) of the Alabama Rules of Criminal Procedure constitute "merits" adjudications. *Borden v. Allen,* 646 F.3d 785, 816 (11th Cir. 2011) ("[A]n Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in a Rule 32 petition [under Rule 32.6(b)] necessarily entails a determination on the merits of the underlying claim; we cannot construe such a rule to be a state procedural bar that would preclude our review."), *cert. denied sub nom. Borden v. Thomas,* ___ U.S. ___, 132 S.Ct. 1910, 182 L.Ed.2d 778 (2012); *see also Frazier v. Bouchard,* 661 F.3d 519, 525 (11th Cir. 2011) ("[B]ecause a dismissal under Rule 32.7(d) for failure to sufficiently plead a claim under Rule 32.6(b) requires an evaluation of the merits of

---

[24]   "Each claim in the petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." Ala.R.Crim.P. 32.6(b).

the underlying federal claim, the Court of Criminal Appeal's determination was insufficiently 'independent' to foreclose federal habeas review. . . . [T]he determination that adjudications under Rules 32.6(b) and 32.7(d) of the Alabama Rules of Criminal Procedure are on the merits comports with this court's precedent."), *cert. denied sub nom.* *Frazier v. Thomas,* ____U.S. _____, 133 S.Ct. 410, 184 L.Ed.2d 58 (2012). Therefore, with respect to all of petitioner's ineffective assistance of counsel claims "the inquiry turns upon whether the state decision was contrary to or an unreasonable application of *Strickland.*" *See, e.g., Means, supra,* 433 Fed.Appx. at 855, citing *Woodford v. Visciotti,* 537 U.S. 19, 22, 24-25, 123 S.Ct. 357, 358-360, 154 L.Ed.2d 279 (2002).[25]

> First, under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of facts materially indistinguishable facts."

> Next, under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts" of the case. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent "unreasonable," it is not enough that the state court's adjudication be "incorrect or erroneous"; that application must have been "objectively unreasonable."

*Frazier, supra,* 661 F.3d at 530-531 (internal citations and brackets omitted); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981 (11th Cir. Apr. 20, 2010) ("Under the 'unreasonable application' prong of § 2254(d)(1), the habeas petitioner bears the burden 'to show that

---

[25]    In other words, "[i]t is beyond question that, in addressing the relevant claim, we are dealing with an area of 'clearly established Federal law [under *Strickland*].'" *Frazier, supra,* 661 F.3d at 527 n.12 (citation omitted).

the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.' 'The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether, that determination was unreasonable—a substantially higher threshold.'" (internal citations omitted)). The foregoing makes clear that "'[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision.'" *Means, supra,* 433 Fed.Appx. at 855 (citation omitted).

To prevail on an ineffective assistance of counsel claim, a petitioner/defendant is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[26]

---

[26] Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. July 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 (Continued)

The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every conceivable nonfrivolous defense.

With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In the context of a claim that counsel was ineffective on appeal, the court must first perform a review of the merits of the omitted or poorly presented claim. The defendant carries his burden of establishing prejudice if the court finds that the neglected claim would have had a reasonable probability of success on appeal.

*Means, supra,* 433 Fed.Appx. at 855-856 (internal quotation marks and citations omitted);

*see also Pair, supra,* 373 Fed.Appx. at 981-982 & 982 ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . . Pair must [also] establish prejudice. It is not enough for him to show that his counsel's

L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

As explained in more detail below, Lamar's numerous claims of ineffective assistance of trial and appellate counsel fail. Before looking at each individual claim, the undersigned would simply note that this is not a § 2254(d)(2) case because petitioner nowhere (*see* Docs. 1 & 19) shows by clear and convincing evidence that any of the state courts' factual findings were unreasonable. *See, e.g., Duran v. Walker*, 223 Fed.Appx. 865, 871 (11th Cir. Mar. 29, 2007) ("[A] state court's factual findings are presumed correct, and the petitioner can rebut them only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As such, for a state court's adjudication to result in an unreasonable determination of the facts in light of the evidence presented, '[n]ot only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.' *Callahan v. Campbell*, 427 F.3d 897, 926 (11th Cir. 2005), *cert. denied*, 549 U.S. 952, 127 S.Ct. 427, 166 L.Ed.2d 269 (2006)."), *cert. denied*, 552 U.S. 874, 128 S.Ct. 179, 169 L.Ed.2d 122 (2007). Accordingly, the undersigned considers solely whether the merits decisions of the Mobile County Circuit Court and the Alabama Court of Criminal Appeals are contrary to, or an unreasonable application of, *Strickland v. Washington* under § 2254(d)(1), despite the fact that even under this section petitioner does not once argue anywhere (*compare* Doc. 1 *with* Doc. 19) that the adjudication of any of his claims of alleged ineffective assistance of trial and appellate counsel by the state courts of Alabama was contrary to, or involved an

unreasonable application of, *Strickland v. Washington*. Instead, all Lamar has done in the instant habeas corpus proceeding is to reassert his claims of ineffective assistance of trial and appellate counsel as if the state courts of Alabama never addressed such claims. (*See* Docs. 1 & 19.) And while the undersigned is sorely tempted to reject Lamar's conclusory allegations out-of-hand for failing to carry his burden in this regard, *compare* 28 U.S.C. § 2254(d)(2) *with, e.g., Evans v. Secretary, Department of Corrections,* 703 F.3d 1316, 1326 (11th Cir.) ("'To obtain habeas relief "a state prisoner must show that the state court's ruling on the claim being presented in the federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."' *Reese v. Sec'y, Fla. Dep't of Corr.,* 675 F.3d 1277, 1286 (11th Cir. 2012) (quoting *Richter,* 131 S.Ct. at 786-87)."), *cert. denied,* ___ U.S. ___, 133 S.Ct. 2742, 186 L.Ed.2d 199 (2013), the undersigned will briefly discuss each claim of ineffective assistance of trial and appellate counsel raised by Lamar in turn.

   a.   **Trial Counsel's Failure to Move to Dismiss Count One of the Indictment**.  Lamar claims that his trial attorneys erred in failing to move to dismiss Count One of the Indictment on the basis that Alabama's capital murder statute, specifically § 13A-5-40(10), is unconstitutional due to its failure to define the essential element of "by one act or pursuant to one scheme or course of conduct." (*See* Doc. 1, at 16-17.) Petitioner has never taken issue with the trial court's determination that his trial attorneys "did, in fact, move to dismiss the indictments on the very grounds now asserted[]" (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 4); therefore, the trial court's implicit determination that Lamar's trial attorneys were not deficient in failing to move to dismiss Count One of the Indictment is neither contrary to, nor an

unreasonable application of, *Strickland v. Washington.* The undersigned would also note that to the extent the motion to dismiss filed by petitioner's trial attorneys was not framed in the exact manner as Lamar has phrased the issue, there was no deficiency in this regard given the clear state of Alabama law at the time establishing both that "Alabama's capital-murder statute . . . [had] been upheld against a variety of constitutional attacks[,]" *Clark v. State,* 896 So.2d 584, 642 (Ala.Crim.App. 2000), *cert. denied,* 545 U.S. 1130, 125 S.Ct. 2930, 162 L.Ed.2d 870 (2005), and that a trial court's failure to define the term in question does not constitute plain error since that term is "not so technical that the jurors could not use their common sense to interpret and understand it." *Wilson v. State,* 777 So.2d 856, 886 (Ala.Crim.App. 1999) (phrase at issue was "single scheme or course of conduct"), *aff'd, Ex parte Wilson,* 777 So.2d 935 (Ala. 2000), *cert. denied,* 531 U.S. 1097, 121 S.Ct. 826, 148 L.Ed.2d 709 (2001). Moreover, in light of the state of Alabama law at the time of petitioner's trial (which has not changed), Lamar has failed to establish that the result of his trial would have been different had his attorneys made this very narrow argument. In other words, Lamar has only made the conclusory allegation that he was prejudiced by his trial attorneys' alleged deficiency in this regard (*see* Doc. 1, at 17 ("Petitioner contends that counsel[s'] unprofessional error was prejudicial to the fundamental rights of the petitioner.")) but has not established, by citation to case law and facts in the record, that the trial court would have dismissed Count One of the Indictment due to the failure of Alabama's capital murder statute to define "by one act or through one scheme or course of conduct[]" had trial counsel so moved the court.

  **b.**    <u>**The Failure of Trial Counsel to Move to Dismiss Counts Two and Three of the Indictment.**</u>  Petitioner contends that his trial attorneys were ineffective in

failing to move to dismiss Counts Two and Three of the Indictment on the basis that those counts were based upon the impermissibly discriminatory and selective acts of the District Attorney in singling him out for capital treatment on account of his race (black) and poverty while other similarly-situated offenders, who were able to retain counsel, were not prosecuted capitally. (*See* Doc. 1, at 17-18.) As to this specific claim, Lamar does not take issue with the trial court's observation that he "failed to provide any facts which indicate that the District Attorney engaged in discriminatory acts by investigating the offenses committed by Lamar and/or in submitting evidence to the grand jury[]" (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 4-5); therefore, the trial court's implicit finding that petitioner satisfied neither *Strickland v. Washington* prong in this regard is neither contrary to, or an unreasonable application of, *Strickland v. Washington.* Moreover, the undersigned need note that petitioner's description of the cases he claims show similarly-situated moneyed white defendants were not charged capitally, that is, *Henson v. State*; *Curry v. State*; and *Banks v. State*, establish the contrary because in none of those cases did the defendants shoot two individuals in a car, as did Lamar. Therefore, because these defendants were not similarly-situated to Lamar there is no reason to believe that the trial court would have dismissed these counts on the basis petitioner asserts herein. Petitioner was not prejudiced as he conclusorily alleges. (*See* Doc. 1, at 18 ("Lamar fundamental rights was prejudiced by counsel unprofessional error in this regards.").)[27]

---

[27] Lamar also contends that the District Attorney's "decision to charge him capitally was arbitrary and capricious and contrary to the legislative intent in enacting 13A-5-40(a)(17)." (Doc. 1, at 18.) In dismissing Lamar's Rule 32 petition (as amended 4 times), the trial court recognized that "the Alabama Court of Criminal Appeals reiterated the constitutionality of § 13A-5-40(a)(17)" in *Dotch v. State*, 67 So.3d 936, 990-993 (Ala.Crim.App. 2010), *cert. denied, ___* U.S. , 131 S.Ct. 3030, 180 L.Ed.2d 846 (2011), and, therefore, determined that "[c]ounsel cannot be (Continued)

c.    **Failure of Trial Counsel to Move to Quash Non-Representative Jury Venire.**   Lamar contends that his trial attorneys should have moved to quash the 60-member jury venire on the basis that there were no disabled persons on the venire. (Doc. 1, at 19-20.) Petitioner does not take issue with the trial court's observation that he failed to present a factual basis for his assertion. (*See* Doc. 13, Exhibit L, November 7, 2012 ORDER, at 5.) More importantly, Lamar makes no attempt to counter the trial court's additional observation regarding his failure to present "facts or legal support for how he was prejudiced by his counsel's failure to move to quash a venire lacking persons with a disability." (*Id.*) Instead, Lamar simply reasserts this conclusory claim in this Court without any citation to legal authority establishing that he enjoys a constitutional right to have disabled persons on the venire from which his petit jury was selected or facts establishing that there were no disabled persons on his 60-person venire. (*See* Doc. 1, at 19-20.) Accordingly, the undersigned concludes that the trial court's determination that the *Strickland v. Washington* test had not been met in this regard is not contrary to, or an unreasonable application of, *Strickland v. Washington*.   In other words, trial counsel was simply not deficient in this regard and Lamar was not prejudiced.

d.    **His Trial Attorneys Engaged in Poor Strategy During the Juror Selection Process.** In this regard, petitioner contends that his trial attorneys should not have moved to reinstate two potential jurors who had been successfully removed for

---

ineffective for failing to do something for which there is no legal basis." (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 5.) Again, petitioner does not take issue with the trial court's decision in this regard and, therefore, the undersigned does not find the trial court's adjudication of this ineffective assistance of trial counsel claim contrary to, or an unreasonable application of, *Strickland v. Washington.*

cause inasmuch as they were later required to use one of their preemptory challenges to ensure that Juror Harpen did not end up on the petit jury. (*See* Doc. 1, at 20.) A review of the record establishes that during preliminary questioning of the potential jurors, Juror No. 1 Carter and Juror No. 3 Harpen indicated that it would be difficult for them to be fair and impartial because they were employees of the University of South Alabama and would tend to believe their colleagues who were listed as witnesses for the prosecution (*compare* Doc. 10, Exhibit A, at T.T. 66-67 *with id.* at 31-32). Accordingly, defense counsel initially indicated that the defense desired to strike these two potential jurors for cause (*id.* at 66-67) but later withdrew the exceptions to Drs. Carter and Harpen (*id.* at 70). Therefore, these potential jurors were placed back on the panel for further questioning (*id.* at 70-71),[28] defense counsel indicating that their stated inclination to believe their colleagues might not be a big deal in the case (*see id.* at 70). Upon individualized questioning, Juror 1 Carter stated that his inclination would be to give any witness in the case who was an employee of the University of South Alabama the benefit of the doubt as to his or her credibility (*id.* at 73-74 & 75) but that this would not make him "favor one side or the other" as to guilt (*id.* at 76).[29] As for Juror Number 3 Harpen, he specifically stated upon individualized questioning by the court (and counsel) that he could decide the case based solely upon the evidence and law and that

---

[28]     "[W]e may renew our challenge, but I'd like to follow-up some, first." (*Id.* at 71.)

[29]     Carter also offered his opinion that "the death penalty in the State of Alabama [is] an abomination." (*Id.* at 75; *see also id.* at 76 ("[T]here's no case for which I would be able to vote for the death penalty. . . . I could not favor the death penalty in any case.").) Carter's position on the death penalty resulted in a successful challenge for cause by the prosecution. (Tr. 258-261 (in successfully challenging thirteen of the 60 jurors, including Juror 1, based on their expressed opposition to the death penalty, the lead prosecutor specifically noted that "[Juror] Number [O]ne, Dr. Carter, said that death is an abomination.").)

he could treat all witnesses the same. (*Id*. at 83; *see also id*. ("[W]hat I should have said [earlier] is that it might have been difficult to show my face around there the next day if it was obvious that I thought their testimony was a bunch of b[aloney].").) Ultimately, however, Juror 3 Harpen was struck through use of a peremptory challenge. (*Compare id.* at 263 (court noted that 43 jurors, including Juror 3, remained after all challenges for cause) *with* Tr. 274 (jury empaneled to hear Lamar's case were Jurors 2, 5, 12, 15, 20, 26, 27, 29, 31, 42, 44, 50, 54, and 57).)

Instead of taking issue with the trial court's adjudication of this claim of ineffective assistance of trial counsel, petitioner merely asserts in a conclusory manner—without citation to any authority—that the attorney "error in this regard was prejudicial to Lamar's fundamental rights to a fair trial." (Doc. 1, at 20.) Accordingly, the trial court's implicit finding that trial counsel was not deficient in this regard, given that counsels' decisions during jury selection were trial strategy that did not permeate the trial with unfairness, is not contrary to, or an unreasonable application of, *Strickland v. Washington.* The trial court's determination in this regard is supported by the record, which reflects that trial counsel made a strategic decision to place Harpen back on the panel since the defense was not going to challenge the credibility of the state witnesses employed by the University of South Alabama and having their decision in this regard "rewarded" by Harpen's clarification that he would treat all witnesses equally and decide the case solely based upon the evidence presented and the law. That defense counsel ultimately used a peremptory challenge to strike Harpen does nothing to undermine counsels' strategy in initially placing him back on the panel, particularly since relevant portions of the trial transcript reflect that the defense did not challenge any of the findings by the state witnesses employed by the University of South Alabama

or, otherwise, try to undermine the credibility of the testimony of those witnesses. (*See* Doc. 10, Exhibit A, T.T. 656-657 (cross-examination of Dr. Richard Gonzalez); T.T. 784 (no questioning of Scott Milroy of the Alabama Department of Forensic Sciences); T.T. 829 (no cross-examination of Dr. Kathleen Enstice[30]).) Beyond the foregoing, Lamar has made no suggestion, much less established, how the result of his trial would have been different had Harpen been struck for cause instead of through use of a preemptory challenge. Petitioner's allegation is this regard is wholly conclusory and specious.

       **e.**       **The Failure of Trial Counsel to Object to the Trial Court's Alleged Failure to Administer the Jurors' Oath Prior to Voir Dire.** Lamar contends that his trial attorneys provided ineffective assistance in failing to object to the trial court's alleged failure to administer the oath to prospective jurors prior to *voir dire* examination by the court and counsel.[31] (Doc. 1, at 21.) The petitioner argues that he was prejudiced by his attorneys' failure to object inasmuch as he was "entitled to have jurors examined and answer questions touching on their qualifications under oath." (*Id.*) And while there is no indication in the record that the prospective jurors were administered the oath set out in Ala.R.Crim.P. 18.4(b) prior to the *voir dire* examination, petitioner makes no mention of the trial court's adjudication of this claim. As noted by the trial

---

      [30]      Defense counsel did take Dr. Enstice on *voir dire* with respect to one picture exhibit that the prosecution was attempting to get into evidence (T.T. 821-824); however, such questioning was not an attack on the credibility of this witness's testimony regarding her autopsy findings or her opinion as to cause of death of the two male victims.

      [31]      The undersigned parenthetically notes that Rule 18.4(b) of the Alabama Rules of Criminal Procedure provides, in relevant part, that "[u]pon calling the case, the court shall administer the following oath: 'Do you and each of you solemnly swear (or affirm) that you will well and truly answer all questions propounded to you touching on your qualifications as a juror, and that you will well and truly try all issues submitted to you and true verdicts render according to the law and evidence, so help you God?'" *Id.*

court, since an oath was administered to the petit jury, this case presented a "'defective-oath situation'" as opposed to a "'no-oath-at-all situation'"[32] and Lamar had failed to show how the unsworn jury venire impacted the result of his trial. (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 7-8.) Lamar does no better in this Court, merely making a wholly conclusory argument regarding prejudice (Doc. 1, at 21), as opposed to establishing exactly how the failure to object to the unsworn jury venire impacted the result of his trial when the verdicts were rendered by a petit jury that was administered the appropriate oath. As an example, petitioner has not come forward with any evidence that one of the unsworn prospective jurors who served on the petit jury provided false information during *voir dire* and that he would have prevailed at trial with a different juror.[33] Thus, petitioner's inability to establish prejudice in this regard—as found by the trial court—properly results in the denial of this claim of ineffective assistance of trial counsel. The trial court's adjudication of this claim of ineffective assistance of trial counsel is not contrary to, or an unreasonable application of, *Strickland v. Washington.*

     **f.**    **The Failure of Trial Counsel to Object to the Trial Court (rather than the Clerk) Administering the Oath to the Petit Jury.**   Lamar contends that the

---

[32]   *See Ex parte Benford,* 935 So.2d 421, 429 & 430 (Ala. 2006) ("'[T]his Court has held that *claims that the venire was not sworn before voir dire examination are waivable, thus implicitly recognizing that such situations are also defective-oath situations and not no-oath-at-all situations.*' . . . Applying the law to the facts of the case before us, we conclude that, even if the trial court did not administer the oath to the venire before voir dire began, the record clearly reflects that the trial court administered the oath to the petit jury that was selected to try the case. Therefore, unless one of the parties objected to the failure to swear in the venire, that error is waived. There is no indication in the record that either party objected." (emphasis in original)).

[33]   It strains credulity for the undersigned to believe that the trial court would not have administered the proper oath had an objection been lodged at the appropriate time that such oath had not been administered to the prospective jurors.

70

petit jurors were not administered the oath by the Clerk, in accordance with Ala. Code § 12-16-170,[34] but, instead, the oath was administered by the trial judge. According to petitioner, his attorneys' failure to object to the trial court administering the oath was deficient and this deficiency prejudiced him inasmuch as he was effectively "tried and convicted by an unsworn jury and the verdict rendered [] cannot stand." (Doc. 1, at 22.) While the record in this case does reflect, as petitioner claims, that the petit jurors were administered the oath by the trial judge (*see* Doc. 10, Exhibit A, T.T. 286-287), Lamar again fails to take to task the trial court's adjudication of this claim. The trial court specifically found that Lamar had failed to meet the *Strickland* test inasmuch as the case action summary sheet reflected that the oath was administered and Rule 18.5(a) of the Alabama Rules of Criminal Procedure specifically provides that "a trial court is authorized to either remind the jurors that they are still under a previously administered oath, or give the jurors the proper oath." (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 8.) Because Ala.R.Crim.P. 18.5(a) indeed provides that the trial court can administer the proper oath to the petit jurors, *see id.* ("'You do solemnly swear, or affirm, that you will well and truly try all issues joined between the defendant[] and the State of Alabama and render a true verdict thereon according to the law and evidence, so help you God.'"), and petitioner cites no authority to the contrary, *cf. Ex parte Hamlett,* 815 So.2d 499, 500 (Ala. 2000) (recognizing that the trial court can administer the oath to the petit jurors), the undersigned finds that the trial court's adjudication of

---

[34]     "The following oath shall be administered by the clerk, in the presence of the court, to each of the petit jurors: 'You do solemnly swear (or affirm, as the case may be) that you will well and truly try all issues which may be submitted to you during the present session (or week, as the case may be), and true verdicts render according to the evidence – so help you God[.]'" *Id.*

this claim is not contrary to, or an unreasonable application of, *Strickland v. Washington.*
The jury in petitioner's case was a sworn jury, *compare Marks v. State,* 575 So.2d 611, 613
(Ala.Crim.App. 1990) (recognizing an "unsworn jury is a non-jury[]" and remanding
case for a determination of whether the petit jury was administered the oath pursuant
to § 12-16-170) *with id.* ("A return to our remand has been filed showing that the oath
was properly administered. Thus, there is no merit in the first issue raised by appellant
on appeal."); therefore, counsel had no basis to lodge an objection and the result of
petitioner's trial would not have been different had an objection been lodged.

**g.      The Failure of Trial Counsel to Object to Certain Exhibits
Offered into Evidence by the State.**  Petitioner next contends that his trial attorneys
were ineffective in failing to object to State's Exhibits 9A, 10, 11, 13, 14, and 15 on the
ground that no chain of custody was established. (*See* Doc. 1, at 22.) According to
petitioner, he was prejudiced by the failure to object because "there's a reasonable
probability that the evidence was tampered with." (*Id.*) Again, as with all other claims
of ineffective assistance of counsel petitioner has asserted, Lamar makes no attempt to
establish that the trial court's adjudication of this particular claim is contrary to, or an
unreasonable application of, *Strickland v. Washington.* A review of the trial court's
decision reflects a finding that petitioner had not satisfied either prong of  *Strickland v.
Washington* because objections to evidence are a matter of trial strategy and the failure
to object in this case would not be second-guessed since Lamar had made no showing
that his trial had been reduced to a sham or mockery of justice or otherwise
substantiated that the evidence was tampered with. (*See* Doc. 13, Exhibit L, November
7, 2012 ORDER, at 9.) In addition to the relevant observations by the trial court, the
undersigned's review of the record in this case indicates that the proper predicate (and

chain of custody) was laid for admission of these exhibits. (*Compare* Doc. 11, Exhibit A, T.T. 682-697 *with id.* at 773-783.)[35] Inasmuch as the undersigned perceives no deficiency in this regard, it is certainly clear that the trial court's adjudication of this claim is not contrary to, or an unreasonable application of, *Strickland v. Washington.*

> **h.** **The Failure of Trial Counsel to Introduce Certain Evidence (a Police Report).** According to Lamar, his trial attorneys were deficient in failing to introduce into evidence to impeach the credibility of Bryan Edwards relevant parts of a police report regarding victim Michael Allison. (Doc. 1, at 22.) That report, which is in the record, relates directly to one of the shooting victims, Michael Allison, and reflects that Allison was arrested on December 30, 2002 and charged with possession of marijuana and possession of a .22 caliber pistol which he told police belonged to Bryan Edwards. (*See* Doc. 10, Exhibit A, Police Reports Attached to State's Motion in Limine.) As noted by the trial court in ruling on petitioner's Rule 32 petition, the trial judge granted the State's motion in limine with respect to *voir dire* and opening statements but reserved the right to rule on the matter during the trial if it became relevant. (*Compare* Doc. 13, Exhibit L, November 7, 2012 ORDER, at 10 *with* Doc. 10, Exhibit A, Transcript of May 13, 2005 Hearing, at 7-9.) The trial court, in ruling on petitioner's Rule 32 collateral attack, questioned whether trial counsel was deficient in this regard since decisions regarding what evidence to introduce are matters of trial strategy (*see* Doc. 13, Exhibit L, November 7, 2012 ORDER, at 10 ("There is no indication that this information

---

[35] The undersigned would note that there is no reason to believe that the result of petitioner's trial would have been different had these exhibits (casings, bullet fragments, etc.) not been admitted into evidence inasmuch as there was no question, based on Lamar's own testimony, that petitioner was the shooter; the only question was whether the jury believed Lamar shot in self-defense or, otherwise, was guilty of lesser crimes (than those charges for which he was indicted).

ever became relevant during the trial of this matter[.]")) but specifically focused on the prejudice prong by finding "nothing [] indicat[ing] that had the report been introduced it would have changed the outcome of the proceeding." (*Id*.) As to deficiency, the undersigned would note that Lamar cites to no case law establishing that the police report information became relevant such that it could have been introduced into evidence. Moreover, as presaged by the trial court (*see* Doc. 13, Exhibit L, November 7, 2012 ORDER, at 10 ("Trial counsel may reasonably avoid presenting evidence that counsel believes may do more harm than good.")), any attempt to question Edwards about Allison's statement in the police report might have backfired since there is nothing in the report indicating that the gun was returned to Allison or that this was the same gun Edwards was observed by Lakia Jackson as possessing within a month of the shooting (*see* T.T. 761).[36] Even assuming the report was somehow relevant, petitioner has not established prejudice because Edwards' credibility was targeted by defense counsel and it was established that Edwards lied to police numerous times (Doc. 10, Exhibit A, T.T. 535-537, 541-542, 544 & 546-548), Edwards admitted to being passed .22 caliber bullets while in the van on the way to his former girlfriend's apartment on the day of the shooting (*id.* at 543), and defense counsel established, through the testimony of Edwards' former girlfriend, Lakia Jackson, that Edwards was in possession of a .22 caliber chrome-plated revolver within a month of the shooting (Doc. 11, Exhibit A, T.T. 761). More importantly, because the police were still in possession of the brown and black .22 caliber pistol confiscated from Allison on December 30, 2002 (Doc. Doc. 10,

---

[36]    Indeed, the exhibits attached to the State's motion in limine establish the contrary, namely, that the Youth Services Unit of the Mobile Police Department was still in possession of the pistol. (Doc. 10, Exhibit A, Police Reports Attached to State's Motion in Limine.)

Exhibit A, Police Reports Attached to State's Motion in Limine), the police report evidence obviously would not have changed the result of petitioner's trial. Accordingly, there can be no question but that the trial court's adjudication of this claim is not contrary to, or an unreasonable application of, *Strickland v. Washington.*

       **i.**     **The Failure of Trial Counsel to Move to Exclude Certain Witness Testimony.**  Lamar next argues that his trial attorneys should have objected to or moved to exclude the testimony of Jay Birch, the manager of the engineering department of Global Tel-link, on the grounds that he was not qualified as an expert witness and the Global Tel-link system is not reliable. (Doc. 1, at 23-24.) Lamar does not call into question the trial court's adjudication of this claim of ineffective assistance of counsel (*see id.*), the trial court rejecting the claim on the basis that the record revealed that Birch "testified as a fact witness, not an expert witness." (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 10.) A review of Birch's testimony by the undersigned confirms that Birch testified as a fact witness, as he offered his "opinion" about nothing. (*See* Doc. 10, Exhibit A, T.T. 457-463.) In addition, Lamar offers nothing but a conclusory allegation—no evidence or citation to case law—that the Global Tel-link system[37] is not reliable.  Accordingly, the undersigned again finds that the trial court's adjudication of this particular claim of ineffective assistance of trial counsel is not contrary to, or an unreasonable application of, *Strickland v. Washington.*

       **j.**     **The Failure of Trial Counsel to Object to the Court's Confusing and Misleading Jury Charges.**  Lamar calls into question the failure of his trial attorneys to object to the trial court not defining the § 13A-5-40(a)(10) element of "by

---

[37]     "Global Tel-link is a[n] inmate and correctional phone system provider for jail phone recordings." (*Id*. at 457.)

one act or pursuant to one scheme or course of conduct" and to the trial court "confusing" the jury during the course of charging on the lesser-included offense of manslaughter—in connection with victim Michael Allison—by "using the term [m]urder rather than manslaughter[.]" (Doc. 1, at 24.) Once again, Lamar has not demonstrated to this Court how the trial court's adjudication of this claim is contrary to, or an unreasonable application of, *Strickland v. Washington.* As to the § 13A-5-40(a)(10) jury charge claim, the trial court found no deficiency by counsel since the Alabama Supreme Court, in *Wilson v. State, supra,* 777 So.2d at 886, specifically explained that the phrase "'single scheme or course of conduct'" is "not so technical that the jurors could not use their common sense to interpret and understand it." (*See* Doc. 13, Exhibit L. November 7, 2012 ORDER, at 11 ("Lamar's counsel cannot be ineffective for failing to do something for which there is no legal basis.").) Moreover, with respect to the manslaughter charge, the trial court noted that although the trial judge inadvertently stated "murder" instead of "manslaughter" neither prong of the *Strickland* test was met since the trial court "corrected the statement on the record." (*See id.*) Indeed, a review of the record in this case reveals that the trial judge did correct his inadvertent statement, or "slip of the tongue," on the record. (*See* Doc. 11, Exhibit A, T.T. 1075 ("If you find from the evidence that the State has proved, beyond a reasonable doubt, each of the above elements of the offense of ***murder*** as charged, then you shall find the defendant guilty of ***Manslaughter.*** If you find that the State has failed to prove, beyond a reasonable doubt, any one or more of the elements of the offense of ***murder – excuse me, of Manslaughter,*** then you cannot find the defendant guilty of ***Manslaughter.***" (emphasis supplied)); *compare id. with* T.T. 1074 (manslaughter charge with respect to victim Eddie Moore in which there is no "slip of the tongue").) It is patently clear that

trial counsel was not deficient in failing to object to the foregoing jury charges; therefore, the trial court's adjudication of this claim is not contrary to, or an unreasonable application of, *Strickland v. Washington.*

      **k.**    **The Failure of Trial Counsel to Object to or Move for a Mistrial due to the Trial Court's *ex parte* Communication with the Jury During their Deliberations.**  According to Lamar, his trial attorneys should have objected to the trial court's *ex parte* communication with the jury during their deliberations. (Doc. 1, at 24-25.)  A review of the trial transcript reflects that after the jury began their deliberations, the trial judge received a question from the jury and responded to that question as follows: "The answer to your question is, yes." (Doc. 11, Exhibit A, T.T. 1103.) Although it appears to the undersigned that the question was a mere housekeeping question for which counsel was not needed, by petitioner's own admission neither he nor his attorneys were present in court when the question was asked by the jury and answered by the trial judge. (*Compare id. with* Doc. 1, at 24.) Accordingly, it is as clear to the undersigned, as it was to the trial court on review of Lamar's Rule 32 petition, that trial counsel could not be deficient for failing to object to "conduct of which they were unaware[.]" (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 12.) The trial court's adjudication of this claim of alleged ineffective assistance of trial counsel is not contrary to, or an unreasonable application of, *Strickland v. Washington.*

      **l.**    **The Alleged Failure of Trial Counsel to Object to the Trial Court Denying Allocution to the Defendant.**  Lamar claims that on August 25, 2005, the trial court "conducted another sentencing hearing to sentence [him] on additional counts of Capital Murder" and that during this proceeding the trial court did not afford him the "opportunity to make a statement in his own behalf." (Doc. 1, at 25.) This claim is

simply specious because, as noted by the trial court in adjudicating this claim on collateral relief, the August 25, 2005 proceeding was merely a continuation of Lamar's July 29, 2005 sentencing, and on that date the defendant was clearly offered the opportunity to allocute but declined. (*Compare* Doc. 13, Exhibit L, November 7, 2012 ORDER, at 12 *with* Doc. 11, Exhibit A, July 29, 2005 Sentencing Transcript, at 8 ("THE COURT: Mr. Lamar, the jury having found you guilty of . . . two counts of Attempted Murder and one count of Capital Murder, the Court adjudicates you guilty. Anything you wish to say before sentencing is imposed? THE DEFENDANT: No, sir.").) Therefore, counsel was not deficient in failing to lodge an objection on August 25, 2005, there being no reason to suspect that Lamar would want to make a statement on that date that he declined to make on July 29, 2005. Moreover, there is absolutely no showing of prejudice; Lamar has come forward with no case law or evidence suggesting that the trial court would not have sentenced him to two additional life without parole sentences on the two counts of capital murder for which the trial court forgot to sentence him on July 29, 2005. (*See* Doc. 11, Exhibit A, August 25, 2005 Hearing Transcript, at 3-4 & 4 ("In 04-1024, it was brought to my attention by the clerk of the court that the jury returned a guilty verdict in Counts One, Two and Three. The defendant was only sentenced as to the first count, so we need to sentence as to Counts Two and Three. Anything from the Defense as it relates to Count Two and/or Three? . . . As to Count Two and Count Three, the Court sentences him to a term of life without the possibility of parole.").)  Accordingly, the trial court's adjudication of this claim of ineffective assistance of counsel was not contrary to, or an unreasonable application of, *Strickland v. Washington.*

  **m.**  **Appellate Counsel's Failure to Challenge on Appeal the Trial**

**Court's Erroneous _Batson v. Kentucky_ Ruling.**   Following the exercise of preemptory strikes, Lamar's trial counsel asserted a _Batson_ challenge on the basis that the State used five of its preemptory challenges to strike five of the remaining seven black prospective jurors. (_See_ Doc. 10, Exhibit A, T.T. 267.) In response to this challenge, the prosecutor provided her reasoning for striking Jurors 40 (admitted distrust of prosecutors, she had gotten in trouble and had to come to court where witnesses "lied on her," and she had a family member she was convinced was falsely convicted of a drug offense), 34 (one of Lamar's attorneys was currently representing her sister), 7 (struck for her young age, 19, as was a white juror, Christopher Miles), 55 (also struck for her tender age, 21), and 57 (a member of the victims' family told the State's jury coordinator that the family knew her). (_See id._ at 269-274.) Following quite a bit of discussion about Juror 57 (_id._ at 271-274), the trial court placed that juror back on the petit jury (_id._ at 274) and denied "the other motions for Batson raised by the defense[.]" (_Id_. at 275.) Petitioner contends that the trial court erred in denying his _Batson_ challenge as to the remaining black jurors who were struck inasmuch as Juror 40 "stated she could set aside her feelings and decide the case based on the evidence and law[,]" (Doc. 1, at 26) and the striking of Jurors 7 and 19 was pretextual because "there is no evidence that their ages would hinder them from performing their duties as jurors and the record reflects that there were other young jurors that was not struck by the prosecutor[.]" (_Id_. at 26-27.) Thus, it is petitioner's position that appellate counsel was deficient in failing to raise this issue on appeal and he suffered prejudice since "there's a reasonable probability the results of the proceeding would have been different." (_Id_. at 27.)

   As with all of petitioner's other claims of ineffective assistance of counsel, Lamar makes no mention of the state trial court's adjudication of this claim. The trial court

found no deficiency in this regard on the basis that there was nothing in the record indicating that "the trial court abused its discretion in denying the *Batson* challenge as to the other strikes by the State or that the State failed to provide race neutral reasons for striking the other black venire members[]" (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 13) and also no ability to establish prejudice given that "[a] trial court's ruling on a *Batson* challenge is entitled to great deference and the appellate court will not reverse that ruling unless it is clearly erroneous[]" (*id.,* citing to *Bryant v. State,* 951 So.2d 732, 740 (Ala.Crim.App. 2003) and *Ex parte Branch,* 526 So.2d 609, 625 (Ala. 1987)). And while petitioner seems to take issue with the trial court's "deficiency prong" analysis (*see* Doc. 1, at 26-27),[38] he only makes the wholly conclusory "prejudice" argument that had appellate counsel raised this claim "there's a reasonable probability the results of the proceeding would have been different." (Doc. 1, at 27.) However, Lamar cites to no case law which establishes that age is not a race-neutral reason for utilization of peremptory challenges or to a case that would have established that the reasons offered by the State for striking Juror 40 were a mere pretext for unlawful racial discrimination and, therefore, has failed to show that had appellate counsel raised this issue that his case would have been remanded for a new trial based on a violation of *Batson v. Kentucky.* Accordingly, the trial court's adjudication of this claim of ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of, *Strickland v. Washington.*

---

[38]      Conveniently, petitioner does not identify the alleged "young jurors" who were members of the petit jury (*see* Doc. 1, at 27) and certainly there is no evidence whatsoever that there were members of his petit jury who fell in the 19 to 21 age range, as did Jurors 7 and 19, as well as Juror 22, Christopher Miles (a prospective white juror) (*see* Doc. 10, Exhibit A, T.T. 270).

n.    **Failure to Raise on Direct Appeal the Use of Transcripts of Tape**

**Recordings.**    Petitioner contends that his appellate attorney erred in failing to raise on

appeal trial counsel's objection to the transcripts of jail tape recordings being reviewed

by the jury while the tapes were played in court. (Doc. 1, at 27.)  Lamar contends it was

error for the trial court to allow the jury to review those transcripts inasmuch as they

were not admitted into evidence and could have only confused the jurors because the

transcripts were not a "verbatim copy of what was on the tape." (*Id*.)  The trial court

found no violation of the *Strickland v. Washington* test given that the Alabama Court of

Criminal Appeals has determined that "the use of a transcript as an aid is

permissible[,]" (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 13, citing *Blanton v.*

*State,* 886 So.2d 850, 865-66 (Ala.Crim.App. 2003)) and because Lamar provided no facts

in support of his  conclusory argument  that the transcript confused the jury (*id.*). A

review of the trial transcript reveals that though the trial court allowed the jury to use

the transcripts as an aid, he admonished the jurors that the transcripts were not

admitted into evidence—that the only evidence admitted consisted of the tapes—and

that "if something is on the transcript [] different from the tape, it is the tape which is

the evidence." (Doc. 10, Exhibit A, T.T. 485;[39] *see also id.* at 484-485; *see* Doc. 11, Exhibit A,

T.T. 830 ("As it relates to the State's request for the hard copy to go in or the transcripts

to go in, that request is denied.").) Because the transcripts of the tapes were not

admitted into evidence but were only used as an aid as is permissible under Alabama

law, *see Blanton, supra,* 886 So.2d at 865-866 (finding no error where transcript of a

recorded conversation was submitted to the jury as an aid to jurors while they listened

---

[39]    (*Cf. id.* at 564 ("The jury can listen to [the tape]. We listened to it here and everybody understood what was said.").)

to the recording and "the jurors' copies of the transcript were taken up immediately"), and the trial court admonished the jurors that the tape recordings contained the only admissible evidence and would control, the undersigned perceives no appealable issue; therefore, neither prong of the *Strickland v. Washington* standard can be met. *Cf. Searcy v. Florida Dep't of Corrections,* 485 Fed.Appx. 992, 996 (11th Cir. Aug. 9, 2012) ("Appellate counsel is not ineffective for failing to raise a nonmeritorious claim on direct appeal."). Thus, the trial court's adjudication of this claim of alleged ineffective assistance of trial counsel is not contrary to, or an unreasonable application of, *Strickland v. Washington.*

**o.    The Failure of Appellate Counsel to Raise the Trial Court's Refusal to Allow a Police Detective to Testify as an Expert Witness on Gangs.** According to Lamar, his appellate attorney was deficient in failing to challenge on appeal the trial court's refusal to allow Detective Dale Leddick to testify as an expert witness on gang characteristics. (Doc. 1, at 28.) As noted by the trial court, in its adjudication of this issue, "whether a person is qualified to testify as an expert is well within the discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion[]" and it found no indication that "the trial court abused its discretion in refusing to allow Dale Leddick to testify as an expert in gang activities." (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 14.) And a review of the trial transcript reflects that the Rule 32 court's adjudication of this issue was correct, the trial judge specifically noting that no foundation had been laid establishing that Leddick was "an expert related to gangs" (Doc. 10, Exhibit A, T.T. 573), the witness having previously testified only that he had "[s]ome[]" training in gang culture and that he "guess[ed]" but did not "know[]" whether the "Department of Justice sends out stuff

about what to look for in gangs[.]" (*Id*. at 571.)[40] Inasmuch as Lamar has made no showing in this Court that the ruling of the trial court was legally incorrect (*see* Doc. 1, at 28 (no citation to case law)), the trial court's determination that Lamar had "failed to meet the *Strickland* test concerning this claim of ineffective assistance of counsel[]" (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 14) is neither contrary to, nor and unreasonable application of, *Strickland v. Washington*.

     **p.**    **Appellate Counsel's Failure to Raise an Alleged Error by the Trial Court Regarding Contact Between the Family Members of the Victims and Members of the Jury Venire.** There is no question but that on two different occasions, during jury selection and the trial of this matter, trial counsel raised the specter of possible contact between members of the victims' family and members of the jury venire. During the jury selection process, defense counsel informed the court that Lamar felt like there was some talking going on between jurors and family members of the victims because those family members were sitting near where the jurors were congregating. (Doc. 10, Exhibit A, T.T. 207.) On this occasion, the trial court took a short recess to in some manner—that is not apparent from the record—handle the matter. (*See id.* at 208.) Later, following return of the jury verdicts finding Lamar guilty of three counts of capital murder and two counts of attempted murder, trial counsel informed the court that Lamar's mother—one day earlier—allegedly saw jurors talking to family members of the victims near the bathroom water fountain during a break and again later that night after the proceedings were concluded for the day she saw the same two jurors engaging

---

    [40]    There was certainly other "gang" testimony in this case. (*See, e.g.,* Doc. 10, Exhibit A, T.T. 322-326 (testimony by witness that victims were wearing a lot of red—red pants, red bandanas, etc.—and that Bloods wear red whereas Crips wear blue).)

in conversation with family members of the victims. (*See* Doc. 11, Exhibit A, T.T. 1111.) These jurors were identified as Ms. East and Ms. Guy (*id.* at 1112) and, following the conclusion of the penalty phase of the trial (*see id.* at 1113 ("I'm not going to do it before we get to the next stage, but I will do it before the trial is concluded.")), the trial court questioned East and Guy about whether they had any communications with any family members of the victims; Guy denied any communication or being in the same general area with anyone and East denied any communication but stated that while she waited for her ride in the evenings she observed some members of the victims' families "standing there," who she might have glanced at but did not speak to (*see id.* at 1284-1286). As correctly noted by the trial court in adjudicating this issue, "Lamar has failed to provide any information which would call into doubt the statements by these jurors or that the trial [judge] erred in his handling of the matter." (Doc. 13, Exhibit L, November 7, 2012 ORDER, at 15.) In other words, there is not one shred of evidence that there was any improper contact between the jurors and any family members of the victims; therefore, there was no appealable issue for counsel to raise. *Searcy, supra,* 485 Fed.Appx. at 996, citing *Diaz v. Secretary for the Dep't of Corrections,* 402 F.3d 1136, 1144-1145 (11th Cir. 2005). Thus, the trial court's adjudication of this issue is neither contrary to, nor an unreasonable application of, *Strickland v. Washington*.

**q. Appellate Counsel's Failure to Correctly Assert that a 2006 Change in Alabama's Self-Defense Law, § 13A-3-23, Applied Retroactively to His Case Based Upon the Doctrine of Retroactivity Recognized in *Teague v. Lane* and as Applied in *Ex parte Harris*.** As the trial court correctly recognized in adjudicating this issue, appellate counsel raised this very claim on appeal and it was addressed by the Alabama Court of Criminal Appeals. (*Compare* Doc. 13, Exhibit L, November 7, 2012

ORDER, at 15 *with* Doc. 12, Exhibit F, at 15-16.) Indeed, the Alabama Court of Criminal Appeals noted that the issue had been framed in the following manner: "In his supplemental brief, Lamar also contends that he is entitled to a new trial so that he may receive the benefit of the recent amendment to the self-defense statute, § 13A-3-23, Ala. Code 1975, which, he argues, applies retroactively." (Doc. 12, Exhibit F, at 15-16.)  The Alabama Court of Criminal Appeals rejected Lamar's argument. (*Id*. at 16 ("[I]n White v. State, . . ., this Court held that 'the amendment to § 13A-3-23 applies only to those crimes that occurred after June 1, 2006, its effective date.' The crimes in this case occurred on July 29, 2003. Therefore, the amendment to § 13A-3-23 does not apply to Lamar's case and Lamar is not entitled to a new trial on this ground.").) Thus, petitioner's argument in this regard is specious. While Lamar attempts to "split hairs" by arguing that appellate counsel did not present the issue correctly because counsel did not argue "*Teague v. Lane* retroactivity" as stated in "*Ex parte Harris,*" he ignores the clear holding in *White v. State* that the 2006 amendment to § 13A-3-23 is not retroactively applicable to crimes, like his, which occurred prior to the effective date of the amendment (June 1, 2006), as well as *White's* clear rejection of retroactivity under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *White v. State,* 992 So.2d 783, 784-785 (Ala.Crim.App. 2007). More importantly, Lamar ignores the inapplicability of *Teague v. Lane,* as *Teague* was a collateral review case, as opposed to a direct review case, as here. *See Teague v. Lane, supra,* 489 U.S. at 310-311, 109 S.Ct. at 1075 ("[W]e now adopt Justice Harlan's view of retroactivity for cases on collateral review. Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced. Petitioner's conviction became final in 1983. As a result, the rule petitioner

urges would not be applicable to this case, which is on collateral review, unless it would fall within an exception."). Clearly, therefore, his appellate attorney was not deficient in asserting a *Teague v. Lane* retroactivity argument to his decidedly non-*Teague* direct review case. *See Searcy, supra,* 485 Fed.Appx. at 996. Because the manner in which Lamar's appellate attorney raised the issue of retroactive application of the 2006 amendment to Alabama's self-defense statute was objectively reasonable, petitioner is entitled to no relief with respect to this claim of ineffective assistance of appellate counsel.

  r. **Appellate Counsel's Failure to Challenge the Trial Court's *Ex Parte* Communication with the Jury.** The Rule 32 court found no basis for finding appellate counsel deficient in this regard inasmuch as Lamar had stated no basis for how he was prejudiced by the trial judge's alleged improper contact with the jury. In that same vein, petitioner has failed to establish in this Court how his appeal would have been different had appellate counsel raised this issue or exactly how appellate counsel should have gone about framing the issue for appeal. There is not even as much as a suggestion in the record that the jury's question concerned a point of law as charged by the court and, therefore, there is no basis to conclude that appellate counsel was deficient or that petitioner suffered any prejudice. *See, e.g., Searcy, supra,* at 996 ("Appellate counsel is not ineffective for failing to raise a nonmeritorious claim on direct appeal.").

  In light of the foregoing, it is clear to the undersigned that Lamar has not established his entitlement to relief under § 2254(d)(1) (or, for that matter § 2254(d)(2)) with respect to any claims of ineffective assistance of counsel raised in the instant petition.

**6.     Lamar's Claim that Alabama's Capital Murder Statute, § 13A-5-40 is
Unconstitutional and Void.**     Petitioner argues that the trial court was without
jurisdiction to render judgment under Alabama's Capital Murder Statute, specifically §§
13A-5-40(a)(10) and 13A-5-40(a)(17), because this statute "was created and enacted by
the Alabama Law Institute in violation of the [S]eparation of Powers Doctrine of both
the United States [Constitution] and the Alabama Constitution of 1901." (Doc. 1, at 31;
*see also id.* ("[The] Alabama Law Institute[,] which consist[s] of members of both the
Judicial and Executive [B]ranch, participated in drafting and creating Alabama's death
penalty statute[ and] [t]herefore[,] . . . [the] statute is unconstitutional and void[.]").) In
addition, petitioner argues that the trial court was without jurisdiction to render
judgment or impose sentence under § 13A-5-40(a)(10) both because that section fails to
define the aggravating circumstances "that enhances the Murders to Capital Offenses[]"
and because that section does not define the essential element of "by one act or
pursuant to one scheme or course of conduct." (*See id.* at 32.)

Although the Alabama courts did not address the merits of this claim, the
undersigned recognizes that had they done so they would have determined, as the
Alabama Court of Criminal Appeals did in *Conrad v. State,* that "'[t]he fact that
individuals from all three branches of government may have served on a body [that is,
the Alabama Law Institute] that drafted this legislation does not constitute a violation of
the separation of powers doctrine[]'" and "'[l]ikewise, . . . does not render [the
petitioner's] indictment void.'" *Conrad v. Culliver*, 2010 WL 1875618, *6 (M.D. Ala. Mar.
15, 2010) (*quoting Conrad v. State, supra*), *report and recommendation adopted,* 2010 WL
1875615 (M.D. Ala. May 7, 2010). This is because the statute was not enacted by the
Alabama Law Institute, as petitioner conclusorily alleges; instead, the statute was

enacted solely by the Alabama Legislature. *Compare id. with, e.g., Doster v. State,* 72 So.3d 50, 118 (Ala.Crim.App. 2010) (recognizing that the Alabama Legislature enacted the capital murder statute), *cert. denied,* ___ U.S. ___, 132 S.Ct. 760, 181 L.Ed.2d 490 (2011). And because Lamar makes no other allegations, the undersigned simply notes the following: "[Petitioner] presents no evidence that the powers of one department were exercised by another in the drafting and enactment of Alabama's capital murder statute. The members of the Alabama Law Institute did not assume the role of legislators in the drafting [of] the state's capital murder statute, but rather brought their experience and wisdom to bear in the drafting of the statute, a statute that was subsequently approved and enacted by the Alabama Legislature." *Conrad v. Culliver, supra*. In addition, it need be observed that Lamar has provided this Court with no authority which calls into question the practice of members of all three branches of government giving their input on legislation that is only enacted by the branch of government that is responsible for enacting laws, that is, the Legislature. Accordingly, the undersigned finds no merit to petitioner's argument based upon the separation of powers doctrine.

Lamar's two other attacks   on § 13A-5-40(a)(10) also lack merit. As reflected above, "Alabama's capital-murder statute . . . has been upheld against a variety of constitutional attacks[,]" *Clark v. State,* 896 So.2d 584, 642 (Ala.Crim.App. 2000), and a trial court's failure to define the term "single scheme or course of conduct[]"does not constitute plain error since that term is "not so technical that the jurors could not use their common sense to interpret and understand it." *Wilson v. State,* 777 So.2d 856, 886 (Ala.Crim.App. 1999). Therefore, the trial court's failure to further define "by one act or pursuant to one scheme or course of conduct" was not error because it is "self-defining" and Lamar offers no opinion on how the trial court could have further properly defined

this element. Moreover, petitioner's argument that § 13A-5-40(a)(10) fails to define the aggravating circumstances "that enhances the Murders to Capital Offenses[]" also misses the mark, it being clear that in 1999 the Alabama Legislature amended § 13A-5-49 to include § 13A-5-49(9), "which provides as a statutory aggravating circumstance that '[t]he defendant intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct[,]'"[41] *Spencer v. State,* 58 So.3d 215, 247 (Ala.Crim.App. 2009), *cert denied,* ___ U.S. ___, 131 S.Ct. 3026, 180 L.Ed.2d 852 (2011), and in 2006, the Alabama Supreme Court indicated that "an instruction that a guilty verdict on the capital offense set out in § 13A-5-40(a)(10) (two or more persons) established the existence of that statutory aggravating circumstance when the offense was committed on or after [] September 1, 1999[.]" *Spencer, supra,* 58 So.3d at 247 (citation omitted). Thus, "in returning a guilty verdict as to the charged capital offense of the murder of two or more people during one act or pursuant to one scheme or course of conduct, [as here,] the jury of necessity unanimously found that that statutory aggravating circumstance had been proven beyond a reasonable doubt, i.e., § 13A-5-49(9)[.]" *Id.* at 248; *see also Mitchell v. State,* 84 So.3d 968, 988 (Ala.Crim.App. 2010) ("When a defendant is found guilty of a capital offense, any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing. . . . Like the appellant in *Waldrop,* Mitchell was convicted of capital offenses that have corresponding aggravating circumstances, i.e., murder committed during the

---

[41]     *See also Pilley v. State,* 930 So.2d 550, 567 n.6 (Ala.Crim.App. 2005) ("Section 13A-5-49, Ala.Code 1975, was amended, effective September 1, 1999, to make the death of two or more persons by one course of conduct an aggravating circumstance."), *cert. denied,* 547 U.S. 1149, 126 S.Ct. 2288, 164 L.Ed.2d 817 (2006).

course of robbery, . . . and murder of two or more persons by one act or pursuant to one scheme or course of conduct . . . . Accordingly, the jury's verdict finding Mitchell guilty of murder during the course of a robbery and of murder of two or more persons pursuant to one scheme or course of conduct established that the jury unanimously found [] two aggravating circumstances." (internal quotation marks, citations and brackets omitted)), *cert. denied,* ____ U.S. ____, 133 S.Ct. 111, 184 L.Ed.2d 51 (2012); *see Brown v. State,* 74 So.3d 984, 1035 (Ala.Crim.App. 2010) ("Because the jury convicted Brown of the capital offense[s] of robbery-murder and of killing two or more people pursuant to one scheme or course of conduct, those statutory aggravating circumstances were proven beyond a reasonable doubt. Therefore, in this case, the jury, and not the judge, determined the existence of the 'aggravating circumstances necessary for imposition of the death penalty.' *Ring,* 536 U.S. at 609, 122 S.Ct. at 2443."), *aff'd,* 74 So.3d 1039 (Ala. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1005, 181 L.Ed.2d 734 (2012).

**C.** **Certificate of Appealability.** Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied partly on procedural grounds without reaching the merits of one underlying constitutional claim, "a COA should issue [only] when the prisoner

shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), but mostly on the merits of underlying constitutional claims, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel, supra,*; *see also id.* at 483–484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to all of Lamar's claims, other than the one claim of ineffective assistance of appellate counsel as heretofore identified, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. With respect to his one claim of ineffective assistance of appellate counsel claim identified above, petitioner has defaulted that specific claim because he raised it for the first time in this Court without fairly

presenting (and exhausting) the claim to the state courts and those same courts would now find the claim procedurally barred, *compare McNair, supra,* 416 F.3d at 1302 & 1305 *with Kelley, supra,* 377 F.3d at 1344 & 1351; thus, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Lamar should be allowed to proceed further, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, petitioner is not entitled to a certificate of appealability as to any of the claims he has raised in his habeas corpus petition.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## **CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 1), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 5th day of May, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**